WALTERS *v.* DETROIT UNITED RAILWAY.

CARRIERS OF GOODS—LIABILITY—CONTINUANCE—NOTICE TO CON-
SIGNEE.
> The obligation of a carrier who holds goods after transit,
> awaiting delivery, continues until the consignee has been
> notified of their arrival and has had reasonable time, in the
> common course of business, to take them away after such
> notification, though the consignee knows the probable date
> of shipment and probable date of arrival.

Error to Oakland; Smith, J. Submitted February 10,
1905. (Docket No. 137.) Decided March 7, 1905.

Case by Guy A. Walters and Charles M. Smith, co-
partners as Guy A. Walters & Company, against the
Detroit United Railway for goods destroyed while in
transit. There was judgment for plaintiffs, and defend-
ant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark* and *James H.
Lynch*, for appellant.

*Rockwell & Zimmerman* (*S. W. Smith*, of counsel),
for appellees.

CARPENTER, J. On the 7th of April, 1903, plaintiffs
purchased at the village of Trenton, Wayne county, cer-
tain furniture for a drug store. They placed that prop-
erty in the custody of defendant's agent at Trenton, with
instructions to ship the same over defendant's railway—
defendant is a common carrier of merchandise—to them
at Pontiac, Oakland county, on Friday, April 10th. Had
the goods been sent as directed, they would, according to
the usual custom, known to plaintiffs, have reached Pon-
tiac on Saturday, the 11th, or Monday, the 13th, of April.
The goods were in fact shipped on the 8th and arrived in
Pontiac on the 9th. They were placed in defendant's

warehouse, and were there destroyed by fire Tuesday, April 14th, before notice of their arrival was given to plaintiffs. Plaintiffs brought suit and recovered judgment upon the ground that defendant's liability as common carrier continued at the time the goods were destroyed. Defendant insists that a verdict should have been directed in its favor.

There was no evidence of defendant's negligence. If, at the time the goods were destroyed by fire, defendant continued to hold them under its responsibility as a common carrier (that is, as an insurer against all injuries except acts of God), it was liable. If it did not so hold them, it was not liable. Jurists have not agreed as to the obligation of a carrier who holds goods after transit, awaiting delivery. Respecting this question,—

"Three distinct views have been taken:   *   *   *

"*First.* That when the transit is ended, and the carrier has placed the goods in his warehouse to await delivery to the consignee, his liability as carrier is ended, also, and he is responsible as warehouseman only.   *   *   *

"*Second.* That merely placing the goods in the warehouse does not discharge the carrier, but that he remains liable as such until the consignee has had reasonable time after their arrival to inspect and take them away in the common course of business.   *   *   *

"*Third.* That the liability of the carrier continues until the consignee has been notified of the receipt of the goods, and has had reasonable time, in the common course of business, to take them away after such notification." See opinion of COOLEY, J., in *McMillan* v. *Railroad Co.*, 16 Mich. 102.

In this case Justice CHRISTIANCY concurred with Justice COOLEY in holding that the view last stated was correct, while Chief Justice MARTIN concurred with Justice CAMPBELL in holding that the view first stated was correct. In the subsequent case of *Buckley* v. *Railway Co.*, 18 Mich. 121, a majority of the court, consisting of Justices GRAVES, COOLEY, and CHRISTIANCY, concurred in holding that the liability of a common carrier continued a reasonable time after the goods were placed in the ware-

house.   There was no occasion for them to decide, and they did not decide, whether that reasonable time commenced to run at the time the goods were placed in the warehouse, or at the time notice was given to the consignee.   We are unable to find that this precise question has ever been determined by this court.   It is necessary for us to determine it now.   Without undertaking to repeat the arguments of Justice COOLEY, which are familiar to all careful students of the Michigan Reports, it is sufficient to say that they are so clear and forceful that we have no hesitancy in declaring that the carrier's obligation continues until the lapse of a reasonable time after he has notified the consignee of the arrival of the goods.   This conclusion disposes of the case, and results in an affirmance of the judgment.

In stating this conclusion, we have not overlooked defendant's contention that the rule does not apply where, as in this case, plaintiffs knew the probable date of shipment, and the probable time of arrival of the goods.   To insist that this circumstance exempts the carrier from liability is to deny the existence of the rule we have just declared. To be more precise, it is to insist that the second, and not the third, of the rules heretofore stated, is the correct one. This is clearly shown by quoting from the opinion of Justice COOLEY in *McMillan* v. *Railroad Co.*, supra:

" The rule as secondly above stated proceeds upon the idea that the consignee will be informed by the consignor of any shipment of freight, and that it then becomes the duty of the former to take notice of the general course of business of the carrier, the time of departure and arrival of trains, and when, therefore, the receipt of the freight may be expected, and to be on hand, ready to take it away when received."

And the same learned jurist, in stating why that rule should be rejected, states a sufficient reason for denying the present contention of defendant:

" To require the consignee to watch from day to day the arrival of trains, and to renew his inquiries respecting

139 MICH.—20.

the consignment, seems to me to be imposing a burden upon him, without in the least relieving the carrier. For it can hardly be doubted that it would be less burdensome to the carrier to be required to give notice, than to be subjected to the numberless inquiries and examinations of his books which would otherwise be necessary, especially at important points."

In support of its position, defendant cites several cases decided by courts who deny the rule declared to be law in this State. It is scarcely necessary to say that decisions of a court denying the rule afford no aid in construing it.

Judgment affirmed, with costs.

MCALVAY, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.