BALTIMORE & O. R. CO. v. DOYLE.

(Circuit Court of Appeals, Third Circuit. January 15, 1906.)

No. 59.

1. CARRIERS—LIMITATION OF LIABILITY—CONDITION IN BILL OF LADING.

A common carrier cannot relieve itself from any portion of its common-law liability for the loss or destruction of goods in shipment, except by express or implied contract with the shipper, and in the absence of an express agreement no contract to that end will be implied from any condition or regulation contained in a bill of lading not within the general knowledge of the shipper, unless clearly and distinctly brought to his attention at the time of the shipment. There is no presumption, either of law or fact, that he had knowledge of such condition, where there is nothing in its position or the color or style of type in which it is printed to render it conspicuous, and the question of actual knowledge in such case is one of fact for the jury.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carrier, §§ 691–693.]

2. SAME—CONSTRUCTION OF BILL OF LADING.

Any reasonable doubt as to the proper construction of the printed portion of a bill of lading should be resolved against the carrier which prepared it.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 148–150, 166.]

3. SAME.

Whether or not a shipper was negligent in failing to read a condition printed on the back of a bill of lading limiting the valuation of the property in case of loss is immaterial on an issue as to whether he was bound thereby, which depends entirely on whether he assented to the condition.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 691–697.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 126 Fed. 841.

John S. Wendt, for plaintiff in error.

E. W. Smith, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. The Baltimore & Ohio Railroad Company by this writ of error seeks to secure the reversal of a judgment recovered against it in the Circuit Court of the United States for the Western District of Pennsylvania, by William Doyle for damages for the alleged destruction, through the negligence of the railroad company, of household goods, including supplies, shipped by his wife, on his account and as his agent, from the city of New York to Glenwood, Pennsylvania. Judgment on verdict was entered December 30, 1903, in the sum of $2,047.68, after a question reserved by the court had been decided adversely to the railroad company. It appears from the record and is not disputed that the shipment was made October 30, 1902, in 104 packages of the aggregate weight of 4,650 pounds; that the freight to Glenwood, amounting to $20.93, was prepaid;

and that the bill of lading when delivered by the railroad company to Mrs. Doyle contained the words "Released to a valuation of $5 per 100 lbs." stamped upon its face in red ink beneath and next to the words and figures "Household Goods 4,650." At a valuation of $5 per 100 pounds the total value of the shipment would have beeen $232.50. The sum of $2,047.68 represented the actual loss or damage to the shipment as found by the jury. The third paragraph of the "uniform bill of lading conditions" printed on the back of the bill of lading contains, among others, the following regulation:

"The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

It appears from the evidence and is not disputed that the value of the goods shipped, as determined by the official classification of the railroad company upon which the rate or charge for carriage was based, was $5 per 100 pounds; that such rate or charge was 45 cents per 100 pounds, amounting to $20.93 for the total shipment of 4,650 pounds; and that this sum was paid by Mrs. Doyle as freight to the proper agent of the railroad company immediately before receiving from him the stamped bill of lading. If Mrs. Doyle in shipping the goods agreed either expressly or impliedly with the railroad company that they should be carried upon the basis of a limitation of liability, in case of loss or damage, to $5 per 100 pounds, the plaintiff was bound by such agreement, and could not legitimately recover, aside from interest and costs, more than $232.50. If, however, she did not expressly or impliedly so agree, or agree to any other limitation with respect to value, the plaintiff was not limited in his recovery to that sum, or any other sum based upon weight of shipment, but was entitled to recover the full amount of actual loss or damage. There is uncontradicted evidence to the effect that Mrs. Doyle had no actual knowledge or notice at the time of shipping the goods, or before the next following day, of the regulation on the back of the bill of lading limiting valuation in case of loss or damage, or of the memorandum stamped in red ink on its face—"Released to a valuation of $5 per 100 lbs."; that she did not at any time in fact agree to such or any restricted or limited valuation of the goods; that she had no intention or idea that they should or were to be accepted for carriage or carried by the railroad company on such a basis; that neither the bill of lading nor the shipping order, as handed in to the agent of the railroad company, contained such a memorandum; and that when the former was delivered to Mrs. Doyle, stamped as described, together with her change after payment of the freight, she noticed that it was "stamped paid," and put it in her purse, without examining it, and did not look at it again on that day.

The second, third and fourth assignments of error are to the refusal of the court below to charge the jury as follows:

"First. That the bill of lading in evidence in this case, 'Plaintiff's Exhibit No. 1,' constitutes a contract between the plaintiff and defendant for the trans-

portation and delivery of the goods mentioned therein, to the consignee, upon the terms specified in said bill of lading, and in so far as it contains terms and conditions, fixing and determining the liability of the defendant in case of loss or damage to the goods shipped or mentioned therein, it stands on the footing of all other contracts in writing and cannot be contradicted or varied by parol evidence. Second. That it appearing in this case by the uncontradicted evidence of the plaintiff's wife, that at the time the goods were shipped, she, as agent for the plaintiff, delivered the goods mentioned in the bill of lading to the defendant and accepted, without objection, the said bill of lading, 'Plaintiff's Exhibit No. 1,' from the defendant company's agent at the time of the delivery of the goods for shipment; that such acceptance of said bill of lading is sufficient to show the assent of the plaintiff to the terms set out in the bill of lading [as] to the liability of the defendant company in this case, and therefore the liability of the defendant company in this case is defined by, and depends solely upon, the terms of the bill of lading. Third. That under all the evidence in this case the defendant company is not liable for more than $5.00 for each hundred pounds in weight of the goods mentioned and described in the bill of lading, namely, $232.50."

If Mrs. Doyle, in the shipment of the goods, was not chargeable in law with knowledge or notice of the regulation on the back of the bill of lading limiting valuation in case of loss or damage, the requested instructions above quoted clearly were improper, as being based upon the assumption, as facts, of matters properly determinable only by the jury. The first tacitly assumes that the bill of lading, as stamped in red ink and delivered to Mrs. Doyle at the time of shipment, was assented to by her as constituting the contract of carriage, with knowledge on her part of its terms and conditions relating to liability in case of loss or damage. The second in like manner assumes that the acceptance by her, without objection, of the bill of lading from the railroad company, was also with knowledge on her part of such terms and conditions. And the third likewise involves an assumption of such knowledge on her part at the time or on the day of shipment. Unless such knowledge was imputable by law to her, the matters of fact thus assumed in the above instructions were properly left by the learned Circuit Judge for determination by the jury. The railroad company certainly has no just cause of complaint with respect to the charge in this particular. That portion of the charge could not without error have been more favorable to it. On this branch of the case the court charged as follows:

"The plaintiff, William Doyle, at the time of this shipment was in the city of Pittsburgh. His business had brought him there. He left his wife and family in the city of New York, and she, the evidence shows, attended to this shipment. She was his representative there and whatever she agreed to in respect to this shipment would be binding upon the plaintiff. What did she agree to? If she agreed to a valuation of this property,—that is to say, if she agreed that for the purpose of this shipment the property should be considered, esteemed, regarded, treated, as of a value of $5.00 per hundred pounds, —if she agreed to that, the plaintiff would be bound by that. Did she agree to it? Under all the evidence, that is the question of fact which I propose to submit to you. That, you will perceive, embraces much more than is in the bill of lading itself. It takes in all the testimony that has been delivered in your presence and hearing, embraces all the evidence, and I propose to submit to you as a question of fact whether Mrs. Doyle agreed to a valuation. * * * I charge you that if Mrs. Doyle agreed to the alleged valuation claimed by the railroad company, $5.00 per one hundred pounds, if she

agreed to that, her husband is bound by the agreement; and if you find that she so agreed, your verdict would be limited to $5.00 per one hundred pounds, and the sum would be $232.50. I further charge you that if Mrs. Doyle's attention was drawn to the regulation printed on the back of this bill of lading limiting the liability of the carrier to an agreed valuation or classification, —if her attention was called to that regulation or she noted it and accepted this bill of lading, as a legal consequence that valuation or rate fixed by the classification would stand here. If her attention was called to the regulation or she saw it and accepted this bill of lading, that would make the contract binding upon her husband. But whether she did or not is for you to say under the evidence. And I further charge you that if Mrs. Doyle saw on the face of this bill of lading the stamped memorandum: 'Released to a valuation of $5.00 per one hundred pounds,' and she accepted the bill of lading, that would amount to a binding contract fixing the valuation and her husband would be bound. But whether she did agree to it, whether her attention was called to it or she saw the regulation on the back of this bill of lading, or whether she saw the memorandum stamped upon the face of it and took the bill of lading with that knowledge, are questions of fact to be determined by you upon the evidence. If you should resolve these questions or any of them as I have last enumerated them to you in favor of the defendant company, your verdict ought to be restricted to $5.00 per one hundred pounds of this shipment, $232.50 in the whole. But if you find that she entered into no agreement for the valuation of this property limiting the liability of the railroad company, and that her attention was not called to the regulation on the back of the bill of lading, and she didn't see the stamp on the face of it—the memorandum stamp—then you would take up the question of the actual value of these goods."

Without undertaking to lay down any universal or unbending rule on the subject of the imputability in law of knowledge of the contents of written instruments, the evidence fails to satisfy us that Mrs. Doyle was chargeable either in law or in fact with knowledge of the regulation on the back of the bill of lading limiting valuation and consequently liability in case of loss or damage. A common carrier cannot relieve himself from any portion of his common-law liability for the loss or destruction of property carried by him, unless by express or implied contract with the shipper. And in the absence of an express agreement limiting the carrier's liability, no contract to that end will or should be implied from any condition or regulation, contained in a bill of lading, not within the general knowledge of the shipper nor clearly and distinctly brought to his attention at the time of the shipment. We are not to be understood as holding that in all cases and under all circumstances the carrier is bound to give to the shipper, aside from the printed or written condition or regulation limiting liability, positive and actual notice of its presence in the bill of lading. Such condition or regulation, or an express reference to it, might be so conspicuous by reason of position, size and style of type and color of letters, or in other respects, as to produce conviction amounting to moral certainty that, unless through wilful disregard, it could not escape the attention of, or fail to be understood by, any shipper of sound mind and able to read and comprehend the English language. Such a case might afford a violent presumption of fact that the shipper had in mind such condition or regulation and, in the absence of objection on his part agreed or assented that the property should be carried subject to it. But certainly, save under very exceptional circumstances, before a shipper

can be bound by a condition or regulation in the bill of lading limiting liability, of which he has not actual knowledge, it must positively and particularly be brought to his attention. The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039; Calderon v. Atlas Steamship Co., 170 U. S. 272, 278, 18 Sup. Ct. 588, 42 L. Ed. 1033. The general rule on this subject as recognized by the Supreme Court, is stated in the latter case by Mr. Justice Brown, who, after citing sundry authorities, said:

"In this last case the rule obtaining in this court is adopted to its full extent by the Supreme Judicial Court of Massachusetts. In these cases it was held to be competent for carriers of passengers or goods, by specific regulations brought distinctly to the notice of the passenger or shipper, to agree upon the valuation of the property carried, with a rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, and that such contracts will be upheld as a lawful method of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

Whether or not in a given case actual knowledge of the condition or regulation exists on the part of the shipper is a question for the jury; and here that question by the verdict was answered in the negative. The original bill of lading is before us, and we do not think that, aside from the memorandum limiting valuation stamped upon its face, of which according to the evidence Mrs. Doyle had no knowledge or notice on the day of shipment, it is of such character or appearance as, under the most authoritative decisions, to require that knowledge of the regulation on its back limiting liability should as matter of law be imputed to her. The regulation as printed is by no means conspicuous or otherwise calculated to arrest attention. It is preceded as well as followed in the same paragraph by other provisions in the same type, and the conditions embrace eleven paragraphs containing in the aggregate a large amount of reading matter. Further, there is no unequivocal statement on the face of the bill of lading of an agreement that the goods should be carried subject to all the conditions printed on its back, but only to those "whether printed or written, herein contained." It is true that next following the language last quoted is the parenthetical direction or notice "(see conditions on back hereof)," but it is questionable on a strict construction—and to such a construction the plaintiff is entitled—whether conditions "herein contained" would extend to conditions printed on the back of the bill of lading, or be restricted to such as might be printed or written in the body of the contract. There certainly was no space on the back of the bill of lading for "written" conditions, as it was filled with such as were printed. Any reasonable doubt as to the proper interpretation of the contract should be resolved against the railroad company. It chose the language incorporated in the printed portions of the bill of lading. On the whole, we are satisfied that the second, third and fourth assignments of error are untenable.

The seventh assignment is to the refusal of the court to charge the jury as follows:

"That if, under all the circumstances of this case, a reasonably prudent person ought to have seen the stipulation stamped on the face of the bill of lading, or ought to have understood that there was a limitation of the liability of the defendant company under the terms of the bill of lading, that then the plaintiff was bound by the terms of the bill of lading."

Such an instruction would, we think, have been misleading and improper. The decision of this case does not turn on circumspection or negligence on the part of Mrs. Doyle at the time of shipment, but on assent or the want of assent by her to the carriage of the goods under a limited valuation and liability. Without her assent express or implied the plaintiff would not be bound by such limitation; and the mere negligence of Mrs. Doyle, if she was negligent, would not supply or manifest such assent.

But little need be said touching the remaining assignments of error. The first is to the admission of evidence, which clearly was relevant and material on the question of assent to limitation of liability. The sixth is to a portion of the charge included in the quotation we have hereinbefore made from it. We wholly fail to perceive how the railroad company justly can object to it. If there was any error,—and we do not say there was,—it was in favor of and not against the company. Nothing can be said in support of the fifth assignment. The eighth does not call for independent discussion, as the considerations germane to the disposition of the second, third and fourth assignments equally apply to it, and require that it should similarly be disposed of.

The judgment of the court below must be affirmed with costs, and it is so ordered.