Decided 28 January, 1908.

## McGREGOR *v.* OREGON R. & N. CO.

93 Pac. 465.

EXCEPTIONS, BILL OF—AMENDMENT—NUNC PRO TUNC ORDER.

1. Where an original bill of exceptions as filed purported to contain the matters which were inadvertently omitted, the appellant, after argument of the appeal, and after notice given in the Supreme Court, was entitled to a *nunc pro tunc* order of the trial court amending the bill by inserting the omitted matter.

SAME—RECORD OF TRIAL—PRESUMPTIONS.

2. Under Sections 169-172, B. & C. Comp., relating to the record of the trial and preparation of a bill of exceptions, it is presumed that the record was kept by the court, and that the court prepared the bill of exceptions, so that an oversight in omitting matter intended to be included in the bill, is in law the error of the court, though it is the practice for the counsel to prepare and submit the bill of exceptions to the court for its approval.

CARRIERS—LOSS OF FREIGHT—ACTION—PLEA—ESTOPPEL.

3. In an action against a carrier for loss of freight, a plea of estoppel by reason of plaintiff having received the bill of lading after loss, and having forwarded it to defendant with his claim for damages, was insufficient, where it alleged no facts showing that defendant acted on the contents of the bill of lading to its prejudice, or that it was misled by anything plaintiff did with reference thereto.

SAME—FINDINGS—EVIDENCE—LIMITATION OF LIABILITY.

4. In an action against a carrier for loss of goods by fire, evidence *held* to support a finding that plaintiff never entered into a special contract, evidenced by a bill of lading limiting the carrier's liability.

SAME—EXECUTION AFTER LOSS.

5. Where, after loss of goods while in the possession of a carrier, it executed and sent to the shipper a bill of lading limiting the carrier's liability as a matter of convenience for the purpose of identifying the property lost, the shipper's receipt of such bill did not limit the carrier's common-law liability.

SAME—LIMIT OF LIABILITY.

6. Mere notice by a carrier to a shipper is insufficient to limit the carrier's liability, an express stipulation being necessary for that purpose.

SAME—CARRIER'S LIABILITY—WAREHOUSEMEN—DUTY OF CARRIER.

7. Where the consignee is present on the arrival of goods, he is required to receive them without unreasonable delay, or the carrier's liability as such is terminated. If the consignee is absent, but lives in the immediate vicinity of the place of delivery, the carrier must, notify him of the arrival of the goods, after which he has a reasonable time to remove them; but if he is absent, unknown, or cannot be found, the carrier may place the goods in a warehouse, and after keeping them a reasonable time, if not delivered, the carrier's liability as such ceases.

SAME—REASONABLE TIME.

8. Plaintiff's agent learned of the arrival of the goods in question between 4 and 5 o'clock P. M., which was a few hours after the car in which the goods were transported reached destination. The shipping receipt had not arrived, and it was customary for the carrier's office to close at 6 P. M. Plaintiff did not remove the goods that night, during which they were destroyed by fire. *Held*, that the loss occurred before the expiration of a reasonable time for the removal of the goods as a matter of law.

SAME—QUESTION FOR COURT OR JURY.

9. Where the facts relating to the reasonableness of the opportunity offered to a consignee for the removal of goods after arrival are few and simple, and conclusively established, whether a reasonable time has or has not elapsed is a question for the court; it being proper to submit it to the jury only in case of a conflict in the testimony, or when the facts are doubtful or complicated, etc.

SAME—LOSS OF GOODS—DEFENSES—PLEADING.

10. A defense by a carrier that part of the goods sued for did not belong to plaintiff could not be proved where not specially pleaded.

SAME—LIMITATION OF LIABILITY—BURDEN OF PROOF.

11. A carrier being ordinarily an insurer of the goods it undertakes to transport, and all limitations of its common-law liability being in the nature of exceptions to its general responsibility, the burden is on the carrier to allege and prove a limited liability contract on which it seeks to relieve itself of its common-law liability.

TRIAL—ORDER OF PROOF.

12. Where, in an action against a carrier for loss of goods, it relied on a limited liability contract, defendant, though entitled to introduce such contract as a part of its case, had no right to introduce it as a part of plaintiff's cross-examination, or to ask plaintiff whether at any time prior to the shipment his attention was directed by the carrier's agent, or by any one, to any of the printed matter on the back of the contract.

TRIAL—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

13. Requested instructions substantially covered by the general charge are properly refused.

From Union: Thomas H. Crawford, Judge.

This is an action by L. McGregor against the Oregon Railroad & Navigation Co., to recover the value of certain household goods and bar supplies destroyed by fire, after the goods had reached their destination and before they were delivered to the consignee. From a judgment in favor of plaintiff, defendant appeals.        Affirmed.

For appellant there was a brief over the names of *Arthur C. Spencer, James G. Wilson and W. W. Cotton,* with an oral argument by *Mr. Spencer.*

For respondent there was a brief with an oral argument by *Mr. James D. Slater.*

Opinion by Mr. Commissioner King.

This is an appeal by defendant from a judgment in favor of plaintiff for $900 damages for the loss, by fire, of certain household goods and bar supplies, used by him in the hotel business. The goods were left by plaintiff for shipment with defendant's agent at North Powder, Or., on February 9, 1906, and directed to be shipped to him at Elgin, in the county named, with the view of having them transported from there by wagon a distance of 60 miles into Wallowa County, to which place he was removing. The goods reached Elgin about noon on February 12th following, and were left in the car in which they were shipped in front of the Elgin Forwarding Company's warehouse, which, from causes unknown, took fire during the night and spread to the car near by containing plaintiff's freight, destroying the goods. It is alleged that no receipt, bill of lading or other instrument in writing was issued to the shipper thereof at the time the goods were shipped, but conceded that a few days after the fire he received a bill of lading with plaintiff's name thereon, which had been signed by the defendant's agent, who claims he was authorized to do so by plaintiff.

1. After the argument, and after notice thereof having been given in this court, counsel for defendant applied to the court below for permission to have the bill of exceptions amended

50 Or. ——34

*nunc pro tunc* to include the bill of lading and other matters inadvertently overlooked in preparing the bill of exceptions in the first instance. After due notice of the proposed amended bill it was signed by the judge of the circuit court as of the same date as that of the first one filed. Counsel for plaintiff moves to strike this amended bill from the files, stating as a reason therefor that the lower court had no authority, power or jurisdiction to authorize the amendment in the case after the term at which the action was tried had expired, and that the application to amend shows there was no mistake made by the court in signing or approving the original bill of exceptions, and that it appears that the defect arises merely from certain matters not having been included therein, but now desired, and that the oversight was that of counsel and not of the court. In *State* v. *Estes,* 34 Or. 196, 205 (51 Pac. 77, 52 Pac. 571, 572, 55 Pac. 25), Mr. Justice Wolverton, after observing that some states, including the United States Supreme Court, have adopted a rigid rule as respects amendments to a bill of exceptions after having been filed in the appellate courts, announces as a rule of this court that: "A bill of exceptions, once settled and signed and properly filed, becomes a part of the record in the case to which it relates, and stands precisely upon the same footing as any other record," and that "if, however, a bill of exceptions, through inadvertence or mistake, has been so made up as not to fairly and truly recite or represent what it purports to show as having actually transpired during the course of the proceedings, it may, by order of the court, entered *nunc pro tunc,* upon proper notice, be so amended at a subsequent term as that it will accord with the real facts"; further stating: "We incline strongly to the more liberal practice as being better suited to subserve the ends of justice, and are therefore constrained to adopt it." Measured by the rule thus announced, and finding that the original bill of exceptions as filed purports to contain the matters included in the bill as amended, it follows that the court, in approving and signing the amended bill of exceptions, acted within its powers.

2. Nor could it be material that the oversight upon which the amended bill was sought appears to be that of the attorney. It is sufficient if it appears that the matters were omitted by the inadvertence of either the court or counsel preparing the bill: for, if omitted, it is to be presumed that the court overlooked it.   Although it has become the practice, and a commendable one, for the counsel to prepare and submit the bill of exceptions to the court for its approval, yet, under Sections 169-172, B. & C. Comp., it is presumed that the court keeps the record of the trial and prepares the bill of exceptions when the case may be appealed, from which it follows that from whatever cause the oversight may have occurred, it is in law the error of the court before which the cause may have been tried, and on having its attention called thereto, after notice seasonably made to those interested, the court has power to correct the bill of exceptions so as to conform to the facts intended to be included therein.   It clearly appears, however, from the amended bill presented, and the court's certificate appended thereto, that it is intended to supersede the original bill, and to include all matters to be considered here, and it will be so treated.

3. In this connection counsel for plaintiff urge that the bill of exceptions, on account of containing more than sufficient testimony to explain the errors assigned, and not having stated separately and distinctly the evidence intended to show the application of the rulings of the court, etc., does not come within the rule of this court, as required in *Hedin* v. *Suburban Ry. Co.* 26 Or. 155 (37 Pac. 540), and subsequent decisions on the subject.   Owing to the conclusion we have reached on the merits of the controversy, a consideration of this point becomes unnecessary: *Steiger* v. *Fronhofer*, 43 Or. 178 (72 Pac. 693).   This action is based upon the common-law liability of the defendant, which, after denying any negligence on its part, sets up four defenses: (1) Exemption from liability, in case of fire, by special contract with plaintiff; (2) that, if liable at all, it is responsible as a warehouseman only; (3) that by a contract with plaintiff its liability is limited to $5 per hundred weight for the household goods, and 50 cents per gallon for the liquors

shipped, and that prior to the shipment the rates under which the goods were shipped had been established by the defendant for their transportation upon the character and value thereof, a higher rate being charged for goods shipped at the risk of the carrier, and a lower rate for goods shipped at the risk of the consignee; (4) estoppel by reason of plaintiff having subsequently received the bill of lading, and having forwarded it to defendant, with his claim for damages. The defense of estoppel was stricken out on motion of plaintiff as being sham, frivolous, redundant and surplusage; but the other defenses were put in issue by the reply. It is urged first that the court erred in striking out the plea of estoppel. An examination of the averments discloses no facts alleged in support thereof, except such as might have been established under the other defenses relied upon. Again, the plea, as given, contains no allegation of facts showing that defendant acted upon the contents of the receipt or bill of lading to its prejudice, or that it was in any manner misled by anything done by plaintiff in reference thereto, all of which were essential to estop plaintiff from asserting his claim against the company: *Haun* v. *Martin;* 48 Or. 304 (86 Pac. 371).

4. There is also testimony tending to show that plaintiff received no receipt, bill of lading or other instrument from defendant until after the fire; that the shipment was made with no understanding between them in reference thereto or as to the contents thereof, all of which was submitted to and passed upon by the jury, as to which facts their verdict is conclusive. And there is testimony from which it could reasonably be inferred that the bill of lading was first wanted by the plaintiff and his agent in order that, by furnishing a means of identification thereof, they could more conveniently procure the goods from the agent at Elgin, and that it was not forwarded to that point until after the loss occurred. McGregor denies ever signing the instrument, and his testimony is broad enough to indicate that no authority was given to any one else to affix his name thereto. When he presented to the company his claim for the loss, he sent no bill of lading, nor did he state upon

what theory his claim was based—whether upon the common-law liability of the company as a common carrier, or upon the special and written contract. So far as disclosed by the record, this shipping receipt was sent to the company as a matter of convenience for the purpose of identifying the property lost. On receipt of the demand for damages from plaintiff's attorney the company requested that the shipping receipt be sent in conformity with their rules in such cases, and it was evidently sent under this request. The claim was disallowed by the company, the receipt returned to plaintiff's attorney, and this action brought, not under the special contract here relied upon by the company, but upon its common-law liability. In this respect this case is unlike those cited by appellant, where the actions were brought upon the contract disclosed by the receipts, bill of lading, etc., and where an attempt is made at the trial to shift the character of the claim. It will be observed in the cases cited, in which this question was fully considered, that the shippers received their bills of lading at the time of the shipment, and not after the loss, as in this case, and that when so received they either expressly or impliedly ratified the contents thereof. There is evidence sufficient to support the findings of the jury to the effect that plaintiff never entered into the special contract claimed through the shipper's receipt, commonly known as the bill of lading, and the mere fact that he received it after the loss cannot avail defendant anything. There is a vast difference between consenting to the terms expressed in a bill of lading before the shipment, if such consent can be implied from the mere fact of receiving it without the signature of the consignor, and a case like the one at bar, where the jury has found that there was no consent to receive the bill of lading at some future time, nor to make the contract included therein.

5. Many authorities hold that the acceptance of such receipt after the loss cannot be taken advantage of by the carrier, and that the shipper under such circumstances is not estopped from asserting his claim against the carrier under its common-law liability, among which are: 6 Am. & Eng. Ency. Law (2 ed.), 642; *Baltimore & O. R. Co.* v. *Doyle,* 142 Fed. 669 (74 C. C. A.

245) ; *Gott* v. *Dinsmore,* 111 Mass. 45 ; *John Hood Co.* v. *Am. P. S. Co.* 191 Mass. 27 (77 N. E. 638) ; *Bostwick* v. *Balt. & O. R. Co.* 45 N. Y. 712 ; *American Ex. Co.* v. *Spellman,* 90 Ill. 455 ; *Phoenix Powder Mfg. Co.* v. *Wabash R. Co.* 101 Mo. App. 442 (74 S. W. 492) ; *Allen, etc., Co.* v. *Can. Pac. Ry. Co.* 42 Wash. 64 (84 Pac. 620).

6. Under the verdict of the jury we must presume that plaintiff neither consented nor authorized his name to be signed to this receipt, and under the rule as substantially stated and recognized in this State in *Seller* v. *Steamship Pacific,* 1 Or. 409 (Fed. Cas. No. 12,644), nothing short of an express stipulation will constitute such an agreement. It cannot depend upon implication or inference, nor conflicting and doubtful evidence, and mere notice to the shipper must be held insufficient. In that case the shipper, at the time of the delivery of the goods for transportation, and before they were transported, was handed a shipping receipt for the goods, which consisted of looking glasses, valued at $450, and the receipt received by the owner thereof contained the words "not accountable for contents." This receipt the owner of the goods accepted without signing, and without being requested to do so, which fact was relied upon by the company as a defense in a suit brought by the owner for the recovery of the value of the goods which were injured in transportation, it being claimed as such defense that, under the law, it was the custom for the company to ship goods in this manner without the signatures of both parties thereto, and that this released the company from liability thereon; but in discussing this feature Mr. Justice DEADY says:

"The law, and not such a custom, ascertains and determines the rights and liabilities of shippers and common carriers. Such pretenses of custom as this appears to be, if allowed to modify the law of the land, would place it in the power of common carriers to make and unmake the law as they choose. I conclude, therefore, that these words, 'not responsible for contents,' amount to nothing, and in no way affect the rights of the shipper or the liability of the carrier. This being the case, and it appearing that the goods were 'received in good order,' the burden of proof lies on the carrier to show that the injury to the goods arose from the only exceptions to his liability. * * *"

7. It is urged that, since the defendant had landed the goods at Elgin, and informed plaintiff's agent (Beals) that they were there and ready for delivery, and the latter, as agent of the plaintiff, had not removed them on the evening of the receipt of the notice, defendant thereafter became liable, if at all, as a warehouseman only. In this connection defendant claims that it was customary in that locality for defendant to unload from the cars on the track the goods of this class shipped to that point, which cars were usually placed in a certain locality for that purpose, and became what is known as "spotted," meaning that the car with its contents was thus placed preparatory to having the goods delivered therefrom, and that after the car reached its destination and was "spotted," and plaintiff's agent was apprised of these facts, the car, as a matter of fact, as well as of law, became a "warehouse on wheels," by reason of which it is maintained that its liability as a carrier then terminated. But whether the car became a warehouse as indicated or not the responsibility of defendant as a carrier continued until after the goods reached their destination and were either unloaded into a warehouse, or left in some other place equivalent thereto, and until plaintiff or his agent had a reasonable time to call for, examine, and remove them. "There is an irreconcilable conflict in the authorities," says Mr. Justice WOLVERTON, in *Normile* v. *Oregon Nav. Co.* 41 Or. 177, 182 (69 Pac. 928), "as to when the duties of a common carrier cease and those of a warehouseman begin, where freight is carried to its destination, and unloaded, and put in a place usual and convenient for its reception by the shipper. Many of the authorities hold that the shipper must have a reasonable time after the arrival and deposit thereof in which to receive and take it away; some requiring notice to the shipper also, while others relieve the carrier at once upon the safe deposit and storage at the usual place, the same being convenient for its reception by the shipper." The owner of the property shipped should undoubtedly have the right, if he chooses, of preventing his goods from remaining stored in a warehouse subject to the warehouseman's liability only as such, and, unless the carriers can announce the

exact time when the goods will reach their destination,. this would be impossible. That much uncertainty always exists in this respect is universally recognized, and to insist that the consignee must be on hand at the precise moment of the arrival of his cargo, which might require days, and in some instances weeks, of constant waiting and watching at the depot, is, in effect, to force upon him what he should clearly be permitted to avoid by the use of reasonable diligence. The enforcement of the rule invoked by the defendant would make these unreasonable requirements of the shipper or consignee necessary, in order to avoid the extra risk of a probable loss that might occur in a warehouse, even if such loss should occur within an hour after the cargo is unloaded and placed there. And,-as stated by Mr. Justice Cooley, in *McMillan* v. *M. S. & N. I. R. Co.* 16 Mich. 79, 103 (93 Am. Dec. 208), cited with approval in *Walters* v. *Detroit U. Ry.* 139 Mich. 303, 305 (102 N. W. 1037) : "To require the consignee to watch from day to day the arrival of trains, and to renew his inquiries respecting the consignment, seems to me to be imposing a burden upon him without in the least relieving the carrier. For it can hardly be doubted that it would be less burdensome to the carrier to be required to give notice than to be subjected to the numberless inquiries and examinations of his books, which would otherwise be necessary, especially at important points.". In order, therefore, to avoid this burden, and at the same time impose diligence upon both the shipper and carrier without inconvenience to either, we find the weight of authority recognizes certain rules governing the delivery of the goods at their place of destination by the common carrier, which may be summarized as follows: If the person to whom the goods are shipped is present upon the arrival thereof, he must take them without unreasonable delay; if he is absent, but lives in the immediate vicinity of the place of delivery, the carrier should notify him of the arrival of the goods, after which he has a reasonable time to take and remove them; while, if he is absent, unknown, or cannot be found, then the carrier may place the goods in some warehouse, and, after keeping them a reasonable time, if the

owner does not call for them, its liability as a common carrier ceases, but if, after the arrival, the consignee has a reasonable opportunity to remove them, and does not, he cannot hold the carrier as an insurer. The liability of the common carrier thus applied and limited we believe to be consonant with public policy, and sufficiently convenient and practicable. Among the authorities in support of this position are: *Moses* v. *Boston & Maine Ry. Co.* 32 N. H. 523 (64 Am. Dec. 381); *Walters* v. *Detroit United Ry. Co.* 139 Mich. 303 (102 N. W. 745); *Hicks* v. *Wabash R. Co.* 131 Iowa, 295 (108 N. W. 534: 8 L. R. A., N. S., 235); *L. L. & G. R. Co.* v. *Maris,* 16 Kan. 333; *Mo. Pac. Ry. Co.* v. *Grocery Co.* 55 Kan. 525 (40 Pac. 899; *Normile* v. *Nor. Pac. Ry. Co.* 36 Wash. 21 (77 Pac. 1087: 67 L. R. A. 27); *Burr* v. *Adams Ex. Co.* 71 N. J. Law, 263 (58 Atl. 609); *Winslow* v. *Vt. & Mass. R. Co.* 42 Vt. 700 (1 Am. Rep. 365); *Wood et al.* v. *Crocker,* 18 Wis. 345 (86 Am. Dec. 773).

8. But it is insisted by counsel for defendant that the question as to whether a reasonable time had elapsed after the arrival of the goods in which to permit plaintiff or his agent to remove them is, under the undisputed facts presented, one for the court and not for the jury to determine, and that the court erred in submitting the question to the jury. The rule on this point is clearly, concisely, and, we think, correctly, stated in *Lemke* v. *Chicago, M. & St. P. Ry. Co.* 39 Wis. 449, 455, in which the court say:

"The rule doubtless is that, whenever there is a conflict of testimony in respect to material facts bearing upon the question, or when the facts are doubtful or complicated and the court cannot satisfactorily determine their weight or importance, the question as to whether a reasonable time has or has not elapsed should be submitted to the jury, under proper instructions. But when, as in this case, the facts relating to the question are few and simple, and are conclusively established by a special finding, or by the undisputed evidence, it is for the court to say whether a reasonable time has or has not elapsed for the performance of a given act."

In the case before us it is disclosed by the evidence that the plaintiff's agent learned of the arrival of the goods between the

hours of 4 and 5 o'clock p. m., which was a few hours after the car in which the goods were transported reached Elgin; that the shipping receipt had not arrived; that it was customary for the office to close at the hour of 6; and that, after considering these facts, he decided to wait until morning.

9. It becomes unnecessary, therefore, to determine here whether the question of the reasonableness of the time in this instance should have been submitted to the jury, for, if the question was properly submitted to the jury, they have found adversely to defendant, and their decision thereon is not, under the testimony, subject to review; but if, on the other hand, it is a question for the court's determination, it appears from the evidence that, after the arrival of the car, the time was so short in which the goods could have been delivered, together with the lateness of the hour when plaintiff's agent was informed of the arrival thereof, that the court, under such circumstances, would have been impelled to hold that the loss occurred before the expiration of the reasonable time to which plaintiff was entitled in which to remove the property, and it would have been imperative upon the court so to instruct the jury, leaving no change in the result. It is clear, therefore, that defendant is in no position to complain in this respect.

10. It is next insisted that the court erred in sustaining the objections to the interrogatories tending to show that a part of the goods lost were not the property of plaintiff. Defendant makes no attempt to plead that plaintiff is not the real party in interest. Such defense must be specially pleaded, in the absence of which, testimony of the character offered on this point is inadmissible; and no error was committed in sustaining the objection thereto. *Overholt* v. *Dietz,* 43 Or. 194 (72 Pac. 695).

11. It is maintained that the court erred in not permitting the defendant to introduce the bill of lading in evidence on cross-examination of plaintiff, and in not permitting him to ask the plaintiff on cross-examination whether at any time prior to the shipment his attention was directed by the agent of the Oregon Railroad & Navigation Company, or by any one, to any of the printed contents on the back of the receipt, which was

received by him after the fire. The point intended to be raised by the bill of lading or receipt was that it constituted a special contract between the parties releasing the defendant from liability as an insurer, and for this purpose was at the proper time admissible in evidence: *West* v. *Washington & C. R. R. Co.* 49 Or. 436 (90 Pac. 666, 671). A common carrier is ordinarily considered and treated as an insurer of the goods it undertakes to transport, and all limitations of the common-law liability are in the nature of exceptions to its general responsibility, from which it follows that, in order to avoid such liability, and rely upon a limitation contract, it devolves upon the carrier both to allege and prove it: *Normile* v. *Oregon Nav. Co.* 41 Or. 177 (69 Pac. 928).

12. This being an affirmative defense, and the burden of proof in this respect being upon the defendant, it follows that to have permitted him to go fully into this question on cross-examination would thereby have enabled him to have procured the advantage by prematurely making the witness his own, and at the same time, under the pretense of cross-examination, of depriving plaintiff of any cross-examination on the points thereby elicited. The court properly sustained the objection to this method of procedure: *Hildebrand* v. *United Artisans.* 50 Or. 159 (91 Pac. 542).

13. A number of errors are assigned on account of instructions requested by defendant and refused by the court; but on examination we find the substance of the instructions requested, except to direct a verdict, were included in those given. Defendant was accordingly not prejudiced by the refusal to give the instructions in the form asked.

We find no error in the record detrimental to defendant, from which it follows that the judgment of the circuit court should be affirmed.                                   AFFIRMED.