In the Matter of the Estate of MAGDALENA CADWELL, Deceased.

Surrogate's Court, New York County, August 13, 1941.

294

*Dutton & Kilsheimer* [*Kenneth J. Mullane* of counsel], for the successor trustee, petitioner.

*John F. X. Browne*, for the objectant.

*George L. Naught* [*Frederick Allanson* of counsel], for the American Surety Company.

DELEHANTY, S. This is a proceeding to settle the final account of a successor trustee. The fund now ready for distribution is payable in equal shares to three remaindermen, only one of whom has filed objections. By stipulation or on terms stated on the record all objections have been disposed of except objection 10 which opposes the compensation sought by the successor trustee for legal services and objections 1 to 5 which challenge the legality of investments made by the accounting trustee in guaranteed mortgage participation certificates. It is conceded that under the will of deceased investments were limited to so-called legals.

The trustee purchased for the trust from Lawyers Mortgage Company five certificates in five respective bonds and mortgages In respect of all certificates the charge is that all estate participations in the underlying bonds and mortgages were secondary and subordinate to the interests of other participants therein. The point at issue can be illustrated by the estate investment of $500

made on December 16, 1931, in certificate No. 65 of series 200633-T (Objectant's Exhibits 4 and 8). This certificate states that in consideration of $500 Lawyers Mortgage Company assigned to the successor trustee " an undivided share or interest to the extent of said sum in a certain bond of 505 Ocean Ave., Inc., for $150,000 dated July 8, 1931, and mortgage securing said bond " covering certain described premises. The principal of the mortgage debt was stated by the certificate to be due January 10, 1937, " with the provision that $1,500 be paid June 1, 1932, and a like sum of $1,500 semi-annually thereafter on the first days of December and June up to and including December 1, 1936, thereby reducing the mortgage to $135,000; *said reduction payments not to be applied, however, to the payment of the share evidenced by this certificate.*" (Italics supplied.) The text quoted is followed immediately by the statement that " the share or interest represented by this certificate is not subordinated to any other shares in said bond and mortgage and is not subject to any prior interest therein; and that this certificate is one of a series, all of like tenor, issued or to be issued for various sums to a total principal amount not in excess of $150,000." The issuing company either sold or retained certificates covering the whole of the amortization payments which the mortgage bond required the mortgagor to make. Objectant's Exhibit 15 is a sample of the certificate issued against amortizations. It provides that such certificate holder " shall be paid out of the proceeds of the installment payment due May 15, 1928, as and when collected, and that said date shall be regarded as the maturity date of this certificate for the purpose of notice and demand hereunder." The five certificates bought for the estate were respectively payable only on the final due dates of the respective underlying mortgages. Each of them contained the provision already quoted that the mortgagor's amortization payments were not applicable to the payment of the certificate. On these facts the objectant asserts that as a matter of law the certificates bought for the estate were not legal investments because secondary and subordinate in lien to certificates issued against the amortizations.

An additional basis of objection is asserted in respect of three of the five certificates under consideration. This is illustrated by objectant's Exhibit 3, a certificate containing the provision that the Lawyers Mortgage Company is irrevocably appointed as agent of the certificate holder and empowered by the latter " to extend the terms of payment of the principal from time to time for such periods and on such terms as it may approve, to postpone, extend or waive the payment of any installments of principal, to exercise or waive every right, condition, provision, option or

privilege in said bond and mortgage or either of them contained or given to the mortgagee * * *." It is contended that by reason of this waiver power in the mortgagee the certificate holder was prevented from resorting to the underlying security in the event of a mortgagor's default.

The accounting trustee is a lawyer of thirty-five years' experience. He has specialized in estate, real estate, corporate and tax work. Prior to making the challenged investments he was in receipt of written offerings of certificates from the Lawyers Mortgage Company which contained the representation that the certificates were legal investments for trust funds in the State of New York. He had had satisfactory business relations with the company in the past. He relied particularly on the fact that the certificates were guaranteed by the issuing company. He testified that he cannot now recall clearly whether he noticed the difference between the three certificates containing the waiver clause and the other two which had none. He did notice the text which denied to the estate certificates the right to participate in amortization payments; but he was assured by the mortgage company that notwithstanding this circumstance the estate certificates would be paid in full when the final maturity date arrived. He made no independent legal analysis of the character of these certificates. He purchased the certificates in the confident belief that they were sound and in the expectation that at the respective due dates the company would pay them in full.

The question whether participation certificates in a single mortgage satisfy the statutory standards prevailing when the investments here were made where they mature at the due date of the balance of the mortgage debt while other certificates in the same mortgage mature at dates coinciding with the dates of amortization payments has been considered heretofore and an affirmative answer has been made. (*Matter of Nugent*, 280 N. Y. 505; *Matter of Gottschalk*, 167 Misc. 397; *Matter of Ryan*, N. Y. L. J. Aug. 26, 1940, p. 448.) The *Gottschalk* case discusses the problem extensively and points out that mere priority in time of payment enjoyed by a holder of a certificate maturing on an amortization date does not constitute priority of lien. In a sound mortgage investment the only immediate result of a payment of an installment on the principal debt followed by satisfaction therefrom of an outstanding certificate is a rise in the mortgagor's equity and a corresponding increase in the value of the security of the remaining certificate holders. This court in the *Gottschalk* case pointed out, however, that if there had been a default by the mortgagor in payment of an installment a foreclosure of the mortgaged property would have been for account

of *all* participants without regard to the " due date " of their several certificates. " A right to receive the capital of their investment prior to the maturity of the whole mortgage could be enjoyed only while the mortgage was in good standing. When a default was declared the holders of certificates of all maturities would have equal rights in subsequent payments on account of principal." (*Matter of Gottschalk; supra,* 408.) What was true in the *Gottschalk* case was true also in the *Nugent* and *Ryan* cases.

The present case is on a different footing. It is in some respects similar to *Tucker* v. *Empire Trust Co.* (242 App. Div. 380) and *Equitable Trust Co.* v. *Green Star S. S. Corp.* (291 Fed. 650; affd., 297 id. 1008), distinguished in the *Gottschalk* case. Here the trustee received certificates which plainly subordinated his rights to the rights of certificate holders who were entitled to payment on amortization dates. In the event of default by the mortgagee in an installment payment the holder of the certificate for payment therefrom could demand foreclosure or payment (unless the special waiver provision interfered) while the holder of a certificate such as those bought for the estate had no right effectively to demand such action. Proof was offered (Objectant's Exhibits 10 to 14) that the issuing company actually made payments on the certificates due on amortization dates (or retained installment payments where amortization certificates therefor were not outstanding) at times when the mortgagor was in substantial default under the terms of the respective mortgages; and that it followed the policy of giving literal effect to the priority granted by the certificates to such certificate holders. There is no showing of a course of, conduct participated in by the certificate holders of all classes which constituted acquiesence in such practice and hence constituted a practical interpretation of the contract. Since the legality or the illegality of the investment depends upon its status when made, any practice followed at the sole instance of the issuing company could not either validate or invalidate the investment.

*Matter of Stupack* (274 N. Y. 198), relied on by the accountant, is not in point so far as the objections here are based on the segregation of amortization payments in favor of certain certificate holders and on the exclusion of other certificate holders from all rights thereto. Aside from this the *Stupack* case was concerned with a wholly different kind of investment (group mortgage certificates) and the decision in that case was affected by circumstances such as the opinion of the Attorney-General in 1928 which have no relation to the present type of investment.

Here the court holds that the certificates purchased for the estate were subordinated to other interests in the same security and that a prior claim to the amortization payments was outstanding.

In this connection the waiver clause plainly operated to the detriment of the holders of certificates in the ultimate mortgage balance since it permitted the issuing company to excuse defaults instead of acting on them for the benefit of all participants. While note is made of this operation of the waiver clause its presence or absence is not the touchstone of liability. The non-legal character of the investments is due to the broader reason that the amortization payments were segregated for the separate benefit of participants therein whether defaults were enforced or not. Accordingly objections 1 to 5, inclusive, are sustained. The surcharge is made only in the amount necessary to make the objectant whole. If the parties cannot agree on this amount the court will fix it on further hearing or on the submission of the decree if the pertinent facts are stipulated.

The court fixes and allows the sum of $500 as and for the full compensation of the accountant for all legal services up to and including the making of the decree in the present proceeding. No costs are to be taxed. This ruling disposes of objection 10.

Submit, on notice, decree settling the account accordingly.