Argued at Pendleton October 29, modified and affirmed December 23, 1919.

## PROPST *v.* WILLIAM HANLEY CO.

(185 Pac. 766.)

**Contracts—Modification of Written Agreement by Subsequent Parol Contract.**

1. A written agreement may be modified by a subsequent parol contract, notwithstanding the general rule embodied in Section 713, L. O. L.

**Sales—Waiver of Contract Provision as to Method of Measurement of Hay Sold.**

2. Provision in contract for sale of hay crop that the buyer should stack it for measurement could be waived, either by a subsequent agreement that part of the hay taken by buyer for immediate use should be weighed, or by seller's estoppel to deny such waiver, by conduct luring the buyer into a situation where he would be in the plight of a covenant breaker liable for damages for breach where none was intended, such as, without objection, allowing the buyer to take such hay without stacking it for measurement.

**Contracts—Consideration Necessary to Contract if Waiver.**

3. Waiver may be the subject of contract, for which a consideration is requisite, the same as in any other contract.

**Interest—From Date of Judgment Rather Than from Breach of Contract.**

4. In recovery for seller's breach of contract of sale of hay crop, interest could not be allowed from the time of breach to the day of trial, but only from date of judgment.

**Appeal and Error—Correcting Judgment in Matter of Interest.**

5. Where judgment for plaintiff buyer for breach of contract of sale of hay crop was erroneous only in including interest on the amount from the date of breach up to the day of trial, the Supreme Court, having all the data before it, could make the necessary computation and adjust the matter by modifying the judgment, eliminating the item of interest.

**Costs—Modification of Judgment Sufficient to Carry Costs to Appellant.**

6. The Supreme Court's modification of judgment for plaintiff buyer for breach of contract for sale of hay crop, by eliminating the

item of $148.33 interest on the amount from time of breach up to day of trial, was sufficient to carry costs in favor of defendant in the Supreme Court.

From Malheur: Dalton Biggs, Judge.

In Banc.

It is agreed that the defendant as party of the first part and the plaintiff as party of the second part entered into a written contract on June 30, 1917, whereby the defendant sold to the plaintiff the entire crop of hay for that year grown on certain realty near Juntura, Oregon, at a price of $14 a ton, reserving to itself seventy-five tons to be used in operating the property. The defendant was to cut, rake and shock the hay. The plaintiff was to haul it and stack it, except the reserved portion. The hay was to be measured thirty days after stacking, and paid for at that time. There are other provisions in the contract not involved here and not necessary for a clear statement of the case.

The plaintiff recites this contract, alleged performance of it and charges that the defendant wrongfully rescinded the contract and refused to comply with it. He also makes this allegation in his complaint:

"That shortly after the making of said written agreement the plaintiff informed the defendant and its manager, William Hanley, that he desired a part of this hay delivered to him prior to the lapse of thirty days' time, the said hay to be for the immediate use of the plaintiff, and it was thereupon stipulated and agreed orally by these parties that the plaintiff might take and use such amount as he needed prior to thirty days in which said hay should be measured, and was to weigh and keep track of said hay, and pay therefor the same price as for other hay, to wit: $14 per ton, and that the said written agreement should be construed in such a manner by these parties so as to permit the said plaintiff to use and feed such amount of

hay as might be necessary prior to measurement thereof; that relying upon said stipulation and the construction of said written agreement, the said plaintiff did use twenty-six tons of hay for which he is indebted to the defendant, but which should be credited upon the amount of money he expended in cutting and stacking said first crop of hay.''

As stated, the defendant admits the making of the contract, but denies the quoted allegation of the complaint. The defendant charges that the plaintiff violated the agreement in that he did not stack the hay in accordance with the terms and conditions of the agreement, but hauled it off the premises without the defendant's consent, sold some of it to other parties and afterwards refused to perform his part of the contract. It claims damages for the amount of hay sold and disposed of by the plaintiff, in the sum of $500. The new matter of the answer is challenged by the reply.

A jury trial resulted in a verdict in favor of the plaintiff, rendered on April 29, 1919, in the sum of $1,631.55. From the consequent judgment the defendant appealed.                Modified and Affirmed.

For appellant there was a brief over the names of *Mr. W. W. Wood* and *Mr. John W. McCulloch,* with oral argument by *Mr. Wood.*

For respondent there was a brief with oral arguments by *Mr. William H. Brooke* and *Mr. P. J. Gallagher.*

BURNETT, J.—Two questions are presented in the argument in the defendant's brief: One is the contention that in allowing the plaintiff to offer proof of the quoted allegation of his complaint the court violated the rule against allowing other evidence of the terms of

an agreement than the contents of the writing itself. The other assignment of error is predicated upon an instruction given by the court to the effect that the measure of damages was the difference between the contract price of the hay and the market value thereof on the date of the breach, together with interest at 6 per cent on that sum until the trial of the action.

1. It is said in effect in 1 Elliott on Evidence, Section 581, cited by the defendant, that it is competent to modify a written agreement by parol contract made after the writing, and that—

"If the parol contract was in fact made subsequent to the written contract and evidence thereof is otherwise unobjectionable, it makes no difference how short the interval may have been."

It is common learning, embodied in Section 713, L. O. L., that when a contract has been reduced to writing and signed by the parties it is to be considered as containing all the terms of the stipulation, "and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing," except in certain instances not here involved.

The issue between the parties then, is whether there was a subsequent agreement. That is one aspect of the contention. Another is that the language of the complaint amounts in legal effect to stating a waiver by the defendant of that provision of the contract requiring the hay to be measured instead of weighed. Without quoting it in detail, it is enough to say there was evidence properly before the jury upon which it could be found that the quoted allegation of the complaint was true.

2, 3. Waiver may be made the subject of contract, for which a consideration is requisite, the same as in any other contract. In practical effect measurement of the hay amounts to an estimate of its weight. It is common knowledge that several conditions may affect the actual avoirdupois of stacked hay. For instance, if it is piled loosely or in low stacks it will weigh less per cubic foot than if packed densely in high stacks, because the greater weight of the higher stack will compress the lower part, so that a cubic foot of it will weigh more than the same unit of a low, loose pile. The contract did not provide how the hay should be stacked. The plaintiff had the opportunity of building high stacks with the chance of an advantage in tonnage by measurement. In actually weighing the hay taken from the field he surrendered a probable advantage which might have accrued to him in stacking, and, considering the matter of the change in the contract or waiver of its terms from the standpoint of a contract, the jury would be authorized to find from that circumstance of disadvantage to the plaintiff a consideration supporting the supplementary agreement. The contract, being for the sale of personal property of greater value than fifty dollars, was necessarily within the statute of frauds. The evidence, however, was sufficient to allow the jury to find that there was a fully performed parol agreement for a substitute method of ascertaining the quantity of hay hauled away for immediate use. We are concluded by the verdict on the existence and actual performance of such a supplemental stipulation which in that respect obviates the effect of the statute within the meaning of *Sayre* v. *Mohney,* 35 Or. 141 (56 Pac. 526), and precedents there noted. It is said in 40 Cyc. 263:

"The confusion among the cases as to the necessity of a consideration for waiver arises out of the element of estoppel which frequently appears in the particular case.   In the absence of conduct creating an estoppel, a waiver should be supported by an agreement founded upon a valuable consideration, although a consideration, such as is necessary to support a contract, is not always essential.   Where the acts of a party are such as to estop him from insisting upon the right claimed to have been relinquished, no consideration is necessary."

The same volume, at page 252, defines a waiver thus:

"The act of waiving, or not insisting on some right, claim, or privilege; a foregoing or giving up of some advantage, which, but for such waiver, the party would have enjoyed; an election by one to dispense with something of value, or to forego an advantage he might have taken or insisted upon; the giving up, relinquishing, or surrendering some known right; an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment or waiver of such right; the intentional abandonment or relinquishment of a known right; the relinquishment or refusal to accept a right; a voluntary relinquishment of some right; the voluntary relinquishment of some existing right; the voluntary relinquishment of a known right; a voluntary relinquishment of the right that one party has in his relations to another; the voluntary abandonment or relinquishment by a party of some right or advantage; a voluntary surrender and relinquishment of a right; the voluntary relinquishment or renunciation of some right; the voluntary and intentional abandonment, renunciation, or relinquishment of a known legal right; the voluntary relinquishment of some known right, benefit, or advantage, and which, except for such waiver, the party otherwise would have enjoyed; the voluntary yielding up by a party of some existing right; a neglect or omission to insist upon a matter of which a party may take advantage at the time when it ought to be done, so that it

may operate as a trap to the other party, to insist upon
it afterwards; the passing by of a thing, or a refusal to
accept it; the renunciation of some rule which invali-
dates the contract, but which, having been introduced
for the benefit of the contracting party, may be dis-
pensed with at his pleasure; an implied consent by a
failure to object.''

There was testimony that the plaintiff hauled about
twenty-six tons for his own immediate use, as he was in
the livery and feed business at the time, and all with
the knowledge of the defendant's agent in charge of the
ranch where the hay was grown, without any objection
being made.   It appears in evidence, too, that the price
of hay nearly doubled over the contract price, and a
situation is delineated where the jury might very prop-
erly believe that with the knowledge of the plaintiff's
action in that respect the defendant did not object, and
that the plaintiff in good faith believed from the con-
versation immediately after the execution of the writ-
ing, had with the agent of the defendant, that he had
a right to take the hay for his use.   Waiver is said
to be akin to estoppel, although not identical, and the
jury might readily have believed that the defendant
lured the plaintiff into a situation where he would be
in the unenviable plight of a covenant breaker, render-
ing him responsible in damages for a breach of the
contract, when none was intended, all of which would
give rise to the estoppel element of waiver.   These con-
siderations lead to the conclusion that the Circuit
Court was not in error in allowing testimony in sup-
port of the quoted allegation of the complaint.   By it
was taken to the jury the question of waiver by defend-
ant of one of the details of the contract requiring meas-
urement rather than weighing of the hay in ascertaining
the quantity, whether the waiver was based on sup-

plemental contract made after the written one and requiring a consideration, or took effect as upon an estoppel.

4–6. The cases of *Williams* v. *Pacific Surety Co.,* 77 Or. 210 (146 Pac. 147, 149 Pac. 524), and *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16 (154 Pac. 759, 156 Pac. 431), settled the matter of interest adversely to the plaintiff, so that the court was in error in directing the jury to allow interest on the amount from the time of the breach up to the day of trial. However, having all the data before us, this matter may be adjusted in this court. The testimony shows that the defendant gave notice of its rescission of the contract on August 18, 1917. That constituted the breach of the contract, if any there was. The question then is: What sum of money on that date at 6 per cent would produce the amount named in the verdict, or $1,631.55, on April 29, 1919, the date of the rendition of the verdict? What is known as the amount in computation of interest is the product of three factors: the time, the rate and the principal. We have the two factors of rate and time, and the product, $1,631.55. By dividing the product of the three factors by the product of two of them, we ascertain in the quotient the third factor, or the original principal. In this case a computation on that basis shows that $1,483.22, counting interest at 6 per cent thereon from August 18, 1917, to April 29, 1919, would produce the amount named in the verdict.

The judgment will therefore be modified by deducting from the amount of the recovery the difference, amounting to $148.33; but otherwise it will be affirmed. The modification is sufficient to carry costs in favor of the defendant in this court.

MODIFIED AND AFFIRMED.