Argued September 22; affirmed October 14; rehearing denied
November 10, 1942

# FIRST NATIONAL BANK OF PORTLAND *v.*
# STRETCHER ET AL.

(129 P. (2d) 830)

Before Kelly, Chief Justice, and Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

*Loyal H. McCarthy*, of Portland, for appellants.

*Borden Wood*, of Portland (McCamant, King & Wood, of Portland, on the brief), for respondents.

RAND, J. On July 15, 1927, the Morgan-Bushong Investment Company executed and delivered a mortgage or deed of trust to the Lumbermen's Trust Company, as trustee, to secure an issue of 6 per cent serial redemption bonds, aggregating the principal sum of $500,000. These bonds are designated in the mortgage or deed of trust as serial redemption bonds and, under its terms, are redeemable serially on the 15th day of July of each year commencing with the year 1928 and continuing until 1947.

The mortgage or deed of trust provides for the resignation or removal of the trustee and the appointment of a new trustee for insolvency or inability to act. Pursuant to this authority, the plaintiff is the successor trustee under said mortgage or deed of trust and, as such, brought this suit, seeking to compel the defendants to interplead and to obtain a judicial determination as to what particular bondholders are entitled to prorate the sum of $6,666.67, which the trustee had in its possession and has brought into court and deposited with the clerk.

The property covered by the mortgage or deed of trust consists of the unexpired portion of a leasehold estate in lots 1, 2, 7 and 8, block 213, in the city of Port-

land. The lease creating the estate provides that the estate shall continue for fifty years and terminate on January 19, 1963. It also provides that the lessee shall construct a building thereon and, in compliance therewith, what is known as the Morgan Building has been constructed and is now situate on said premises.

The mortgage or deed of trust also provides:

"The Company covenants that it will on or before the 10th day of August, 1927, and on or before the 10th day of each calendar month of each year thereafter so long as any bonds issued hereunder shall be outstanding, pay to the Trustee one-twelfth (1/12) of the aggregate face amounts of bonds then outstanding hereunder and maturing by their terms on the 15th day of July next ensuing, which money shall by the Trustee be credited to a Serial Redemption Fund Account and shall be applied by it upon the payment of such bonds as they shall mature."

Prior to July 15, 1932, the Lumbermen's Trust Company had become insolvent and the Equitable Trust Company had been appointed as trustee under the mortgage. It, too, became insolvent and later went into the hands of a receiver. Prior to said date, the Morgan-Bushong Investment Company advanced and paid over to one or the other of said trustees sufficient moneys to redeem all bonds maturing prior to said date and also to pay the interest on all outstanding bonds, and these moneys were so applied by the then trustee.

In addition thereto, the Morgan-Bushong Investment Company had advanced and paid to the Equitable Trust Company the sum of $12,000 for the purpose of having the same applied in part payment of the principal of bonds maturing on July 15, 1932, amounting

to the sum of $18,000. This sum was misapplied by the Equitable Trust Company in the purchase of other securities and on said date no part of said sum of $12,-000 was available to be applied in the redemption of said bonds. At the same time, the Morgan-Bushong Investment Company, although it continued as a going concern, had become unable to meet its obligations under the mortgage and, by reason of the foregoing, none of said bonds were redeemed at said time and none of the interest accruing on the other bonds was paid. Later, and by order of the court which appointed the receiver, the Security Savings and Trust Company, which had succeeded as trustee under the mortgage, collected from said receiver the said sum of $12,000.

Upon the happening of said default, a bondholders' committee was appointed and a contract was entered into between said committee and a large number but not all of the bondholders. Only a part of the owners of bonds maturing on said date entered into said contract. Those whose bonds matured on said date and who refused to enter into said contract have been paid from said fund of $12,000 two-thirds of the principal of the bonds held by them, while those whose bonds matured on said date and who entered into said contract have received nothing from said fund. By this transaction, the $12,000-fund was reduced to the sum of $6,666.67, the amount now on deposit with the clerk of the court.

By its decree, the court below held that only those whose bonds matured on July 15, 1932, and who had received no part of the $12,000 (the respondents herein), were entitled to share in the distribution of the moneys now on deposit with the clerk of the court. From this decree, all other defendants, except those

whose default had been entered in the case, have appealed.

■ It is well settled that a sinking fund under a bond mortgage is a trust fund, the title to which passes from the debtor to the trustee who holds it for the benefit of the bondholders. See *Armada State Bank v. Union Guardian Trust Co.*, 262 Mich. 487, 247 N. W. 787; *Equitable Trust Co. v. Green Star Steamship Corp.*, 291 F. 650; *Warder v. Brady*, 115 F. (2d) 89; *Truby v. M. & T. Trust Co.*, 141 Misc. 507, 253 N. Y. S. 108; and *Tucker v. Empire Trust Co.*, 242 App. Div. 380, 274 N. Y. S. 895.

■ It is clear, therefore, that the title to the $12,000 deposited with the trustee by the Morgan-Bushong Investment Company for the partial payment of the principal of the bonds maturing on July 15, 1932, amounting to the sum of $18,000, passed to the trustee for the benefit of the holders of those particular bonds and that, since two-thirds of the holders thereof have not received their proportionate part of said sum, they are still entitled to have the balance of said sum distributed to them in preference to that of any other bondholder whose bonds matured at a later date, unless something has occurred, as contended by the appellants, to divest them of such right.

After its appointment, the bondholders' committee collected from certain directors of the Morgan-Bushong Investment Company the sum of $45,000 in settlement of a claim that these moneys had been wrongfully paid to them as dividends upon their stock in said company, and this money was thereupon prorated among the owners of all bonds then and now outstanding as part payment of the interest that had accrued upon said bonds. Because the respondents herein received their

proportionate share thereof, the appellants contend that the respondents are now estopped to assert any preference or right superior to that of the remaining bondholders to the fund now on deposit with the clerk of the court.

■■ In *Mitchell v. Hughes*, 80 Or. 574, 157 P. 965, this court, speaking through Mr. Justice McBride, said:

"Where there is no intention to waive, there is no waiver, unless the conduct of the alleged waiver is such as to have misled the waivee to his prejudice. 'Waiver involves both knowledge and intention; an estoppel may arise when there is no intention to mislead. Waiver depends upon what one himself intends to do; estoppel depends upon what he caused his advisary to do.' 40 Cyc. 255.   *   *   * An estoppel arises where the act or declaration of one party has misled another to his prejudice into doing or failing to do an act."

■ To constitute an estoppel such as that claimed here, this court said in *Security S. & T. Co. v. Portland F. M. Co.*, 124 Or. 276, 261 P. 432:

"*   *   * there must have been some omission, misconduct, misrepresentation or fraud by the party against whom the estoppel is asserted, or by someone with whom he was in privity, which caused another to be misled and, because of being misled, to have been induced to have altered his position. The very basis of an equitable estoppel is that the party against whom it is urged, or someone in privity with him, has said or done something which he ought not to have said or done, or has omitted to say or do something which he ought to have said or done, and because thereof some other person has been misled and thereby induced to change his position in some material respect: Haun v. Martin, 48 Or. 304, 86 P. 371; McGregor v. Oregon R. & N. Co., 50 Or. 527, 93 P. 465; Ashley v. Pick, 53 Or. 410, 100 P. 1103; 10 R. C. L. 697; 21 C. J. 1133."

■ When the $45,000, above referred to, came into the hands of the trustee, it constituted a trust fund and the title passed to the trustee for the benefit of the bondholders. It did not constitute a special trust for the benefit alone of the respondents and, hence, the trustee was bound to distribute those moneys to the owners of all bonds then outstanding and unpaid. Hence, there was and could be no estoppel upon the part of any bondholder who shared in the distribution of that fund, because of that fact alone.

The appellants also contend that, under the terms of the contract, the respondents, upon depositing their bonds with the depositary, waived their claim of priority and are now estopped to assert the same. Before considering the provisions relied upon by the appellants, other facts should be stated.

There was at the time this contract was entered into outstanding and unpaid bonds amounting to $426,500, of which only $386,500 had been deposited, leaving bonds amounting to $40,000 which were not deposited and whose owners did not sign the contract. The contract, however, provided that it should become operative when bonds amounting to $341,200 were deposited with the depositary.

Subdivision 3 of the contract provides:

"Each and every Depositor, for himself, does hereby assign and transfer to the 'Committee' the bonds deposited hereunder by him and agrees that the 'Committee' shall by such deposit be vested under the terms hereof as the Trustee of an express trust with the legal title to all the bonds deposited hereunder and with all the rights and powers of the owners thereof. The Depositors respectively agree that upon demand of the 'Committee', they will execute and deliver such transfers, assignments, powers of attorney, or other documents as may be

reasonably required by the 'Committee' for carrying out the purposes and provisions of this agreement.

"The Depositors hereby jointly, severally and respectively constitute and appoint the 'Committee', as at any time constituted, their agent or attorney in fact, with full power of substitution, for the purpose of carrying out this agreement.

"The 'Committee' shall have power and authority to exchange, under the conditions hereinafter set forth, bonds of the '1927 Issue' deposited with it hereunder for bonds of equivalent face value of a new issue executed by the 'Morgan Building' in accordance with the general terms and conditions set forth in that certain letter addressed to the bondholders by the 'Committee', dated the _____ day of _____, 1932, which letter is hereby referred to and by such reference made a part hereof."

Subdivision 4 provides:

"The 'Committee' will hold all bonds of the '1927 Issue' deposited with it as collateral security for the bonds of the new issue until such time as the 'Committee' has received all of the outstanding and unpaid bonds of the '1927 Issue'. When there has been deposited with the 'Depositary' for exchange hereunder all the unpaid and outstanding bonds of the '1927 Issue' and such exchange has been effected, the 'Committee' may surrender the bonds of the '1927 Issue' to the 'Morgan Building' for cancellation.

"For the purpose of carrying out the exchange of bonds hereinbefore provided, in the manner herein provided, and for the further purpose of protecting each and every bondholder depositing bonds of the '1927 Issue' with the 'Depositary' in every right of every kind or character, such Depositor may have by reason of the ownership of said bonds, the 'Committee' is hereby constituted and appointed representative of the Depositors, and each of them, with full power and authority in

the name and on behalf of the Depositors, or in its own name, to do and perform any act or anything that any individual bondowner or bondholder acting alone or with others could do for the purpose of protecting or enforcing his rights in and to the debt evidenced by said bonds and the Trust Deed securing said bonds; provided, that the 'Committee' shall have no power or authority to scale down or reduce either the principal amount or the interest upon the bonds of the '1927 Issue' deposited under this agreement without the consent of owners representing more than one-half of the bonds of the '1927 Issue' unpaid and outstanding; and provided further, that the 'Committee' shall not have power to hypothecate said bonds or the coupons attached thereto."

Subdivision 5 provides:

"The 'Committee' shall have the power and is authorized to demand, collect, and receive all monies due or that may become due and owing or payable in respect to the bonds and coupons deposited, or any of them, whether for interest, principal or otherwise."

Subdivision 8 provides:

"There shall be no preference or priority as between any Depositor and any other Depositor."

Subdivision 10 provides:

"The 'Committee' may, at any time, terminate this agreement, and the same shall terminate when in the opinion of the 'Committee' the objects have been accomplished or are impossible of accomplishment. In the event of termination hereof the holders of certificates of deposit, on surrender of said certificates to the 'Depositary', shall share pro rata in any securities or other property held by the 'Depositary' or the 'Committee'. There shall be no preference or priority as between any Depositor or any other Depositor."

542

■ Referring to the moneys now in controversy and to the above provisions of the contract, the trial court, in its opinion, said:

"The fund * * * is unquestionably a trust fund intended and established for the retirement of these particular securities. They (the respondents) held both legal and equitable claims against the same prior to claims of other bond holders and they were not divorced from these prior rights by virtue of signing the depositor agreement. This latter agreement nowhere specifically nor by necessary or reasonable implication divests them of these rights. The statement of no preference or priority between any depositor and any other depositor does not, in my opinion, have reference to inter se priorities existing between the bond holders at the time of the execution of the depositors agreement but only to a relationship established between all depositors and the bondholders committee. I do not feel the far-reaching consequences contended for by the bondholders committee should be allowed to prevail to alter this original relationship in the absence of some clearly expressed intent to waive or the acceptance of some inconsistent benefits under the operation of the agreement. No such intent or acceptance of benefits appears in the record. All depositors were cooperating in a general refinancing or reorganization plan, which apparently has failed and nowhere in the agreement or record can I find any reasonable basis for recognizing a waiver by the holders of 1932 maturities of their preexisting and continuing priorities. The facts in the case show no grounds for the application of an estoppel, and waiver has not been established."

With this conclusion, we concur.

Appellants state in their brief:

"It is axiomatic, that any interest which the 1932 maturity bondholders might have in the serial redemption fund would pass with title to the bonds unless specifically reserved."

■ That would be true in case of an absolute sale of bonds where both the legal and equitable title pass to the transferee. It is not true, however, where the transfer is made not as an absolute sale but to a trustee of an express trust. In such case the legal title passes but not the equitable title. Hence, it is not axiomatic, nor is it true, that the equitable interest of the 1932 maturity bondholders in the trust fund passed to the committee, as contended for by the appellants, under the specific provisions of this contract. The contract provided that the bondholders' committee was authorized to exchange the bonds of these 1932 maturity bondholders for bonds under the new issue. If such exchange had been made, a different question would be presented, but since the exchange has not been made, although authorized by the contract to be made, the committee is still a trustee of an express trust and holds the bonds as a trustee for the beneficiary and not as the absolute owner thereof. The committee, however, was never in the position when an exchange of the old bonds for the new bonds could be made. This is true both under the provisions of the contract and as a matter of law. The contract provided that, upon the delivery by the original bondholders of their bonds to the depositary, a new mortgage should be executed by the Morgan-Bushong Investment Company to secure the new issue and that new bonds should be issued in lieu of the old bonds. By subdivision 4 of the contract, above quoted, the committee was authorized to hold all original bonds that were deposited as collateral security for the bonds of the new issue until all outstanding and unpaid bonds of the old issue had been received and that when all had been received and deposited with the depositary, then the exchange would be made. But,

since, as stated, original bonds amounting to $40,000 have never been deposited and are still outstanding in the hands of the original owners, this contract became impossible of performance as no exchange of one for the other could be made. It is not supposable that the parties intended that bonds amounting to $40,000 should be secured by the old mortgage and all other bonds be secured by the new, and that both mortgages should exist at one and the same time. This obviously was in the minds of the parties when they entered into said contract for it provided by section 10 thereof that the committee "may, at any time, terminate this agreement, and the same shall terminate when in the opinion of the 'Committee' the objects have been accomplished or *are impossible of accomplishment.*" This contract was entered into on September 1, 1932, and this suit was commenced on the 10th day of April, 1940, seven years and seven months after the contract was entered into. During all this time, the committee had failed to put itself into the position where it could itself execute the contract and there is nothing appearing in the record which shows that it can ever execute the contract. That affords an additional reason for affirming the decree of the circuit court.

Section 10 further provides that, upon the termination of the contract, all bondholders whose bonds had been deposited "shall share pro rata in any securities or other property held by the 'Depositary' or the 'Committee'." Although the depositary and the trustee in the instant case are one and the same entity, they were acting in entirely different capacities, and there are at this time no securities or other property which are now or at the time of the commencement of

the suit were held by the depositary or by the committee. This provision of the contract fails to support the contention of the appellants that the holders of bonds maturing later than July 15, 1932, are entitled to prorate the trust fund in question.

For these reasons, we hold as did the trial court, that the respondents herein are entitled to have this contract terminated as to them and to have said fund now in the hands of the court distributed to them alone in payment of two-thirds of the principal of the bonds now held by them.

Finding no error, the decree of the lower court is affirmed.