Argued November 29, 1950; reversed with directions January 17, petition for rehearing denied April 25, 1951

STEINER, INC. *v.* HILL ET AL.

226 P. 2d 307
230 P. 2d 536

*Asa L. Lewelling,* of Salem, argued the cause for appellant. With him on the brief was Bruce Spaulding, of Salem.

*John H. Carson,* of Salem, and Philip Hayter, of Dallas, argued the cause and filed a brief for respondents.

Before LUSK[*], Chief Justice, and BRAND[**], LATOURETTE, WARNER and TOOZE, Justices.

LATOURETTE, J.

Plaintiff appeals from a judgment that it take nothing by its action and from a judgment of $6,000.00 entered against it on defendants' counterclaim.

Plaintiff, as buyer, instituted action against defendants, as sellers, to recover $6,000.00 which it had advanced to defendants on a written hop contract, entered into between the parties on the 25th day of July, 1947, it being contended that defendants failed

---

[*] Chief Justice when this case was argued.
[**] Chief Justice when this opinion was rendered.

to deliver to plaintiff the quality of hops agreed to be delivered by defendants. Defendants counterclaimed on the theory that plaintiff had waived delivery of the hops pursuant to the original contract so far as quality was concerned. The jury returned a verdict in favor of the defendants on their counterclaim.

At the conclusion of the taking of the testimony, the buyer moved, with verbosity, for a directed verdict, the essence of the motion being that the sellers admitted the violation of the contract, save for the so-called waiver, and since there was no waiver in fact or in law, the buyer was entitled to a judgment for a return of the $6,000.00 advanced.

Sellers in their brief set forth the following:

"The issue involved in this appeal narrows itself to the following proposition: Did the defendants produce and tender to the plaintiff hops which met the quality provisions of the contract entered into between the parties, subject to any modification or waiver of said provisions? If the defendants did so, the judgment should be affirmed."

By the terms of the contract, buyer engaged to purchase from the sellers the crop of hops then growing on their eighty-acre farm in Polk county, consisting of 20,000 pounds net weight for the agreed price of 60 cents per pound for hops containing not over eight per cent leaf and stem content, and an increased, graduated price for hops of less leaf and stem content.

The sellers agreed to deliver to buyer at said prices said hops in part, or in whole, as the buyer should elect, f.o.b. warehouse, for inspection and acceptance between September 1, 1947, and October 31, 1947, said hops to be of "sound condition, good and even color, fully matured but not over-ripe, flaky, cleanly

picked, properly dried and cured, not broken, free from vermin, mould, or other diseases, etc.''

Buyer agreed to advance to defendants, at its option and as part payment for said hops, the sum of $6,000.00 on August 20, 1947, this being the "amount necessary to cultivate, grow, harvest and bale the hops hereunder sold, etc.''

The alleged waiver pleaded by defendants is as follows:

"That at the time of the execution of said agreement said hops so growing in the hop yard of the defendants, as aforesaid, showed the presence of mildew, with which plaintiff then and there was familiar, and that, immediately prior to the picking of said hops, defendants notified plaintiff that the mildew in said hops had increased and sought from plaintiff advice as to what to do, and that plaintiff, with full knowledge of said mildew in said hops, paid defendants said sum of $6,000 for the purpose and instructed defendants to pick and deliver the same to plaintiff notwithstanding, and, except as in this amended answer and counterclaim stated, defendants duly and fully performed all the terms and conditions of said agreement on their part to be performed."

The evidence of such alleged waiver is found in the testimony of defendant Mrs. Hill, in which she testified that she called on Howard Eismann, the local agent of the plaintiff, on the 21st day of August, 1947. We quote from the transcript:

"Q  Did you have a conversation with him then?

"A  Yes. I told him we would have over 100 bales of hops, then I went on to ask him—to tell him we would not be able to give him a good-looking hop, and find out what he wanted us to do.

"Q What did you discuss as to the reason for not having a good-looking hop?

"A Mildew.

"MR. LEWELLING: If the Court please, I am going to object to this line of testimony as being immaterial and irrelevant, as varying the terms of the contract. It provided for a certain quality of hop, outlined what the quality provisions are, color, etc., and these conversations would tend to vary that.

"MRS. HILL: It does vary it.

"THE COURT: Just a moment, Mrs. Hill—you cannot answer now, the lawyers are talking.

\* \* \*

"MR. CARSON: What was that conversation, Mrs. Hill?

"A It was about the mildew condition, that it was impossible to pick it out by hand.

\* \* \*

"MR. CARSON: What did you tell Mr. Eismann, or what did he tell you, so far as you can recall the words and substance of the conversation with respect to this mildew?

"A We all knew the mildew was there.

"THE COURT: The question was, what was the conversation?

"A He told us to go ahead and pick the hops because he needed them, and to do the best we could.

\* \* \*

"MR. CARSON: Did Mr. Eismann say anything in this conversation we are speaking about, Mrs. Hill, of the fact that there was mildew in your yard?

"A Mildew was mentioned, yes.

"Q By Mr. Eismann?

"A Yes.

"Q What did he tell you to do? When I say 'he', I mean Mr. Eismann.

"A He told us to go ahead and pick them and do the best we could because he needed the hops.

"Q At that time did he give you the $6,000. represented by the check marked plaintiff's Exhibit B?

"A He sent out into the other office to get it.

"Q And it was then delivered to you, was it?

"A Yes."

Defendants having alleged a waiver on the part of the plaintiff, the burden of proof is upon them to prove such waiver.

In the case of *Propst v. William Hanley Co.*, 94 Or. 397, 401, 185 P. 766, involving the sale of hay, it was contended that the written contract between the parties was modified by a subsequent oral agreement. We said that the language of the complaint amounted in legal effect to stating a waiver, and we held that: "Waiver may be made the subject of a contract, for which a consideration is requisite, the same as in any other contract." We also held in that case that where there is an estoppel, consideration for the modification is unnecessary. The above principle was later adhered to in *Craswell v. Biggs*, 160 Or. 547, 86 P. 2d 71.

There was no consideration for the alleged modification of the agreement going to make up the waiver because defendants did nothing that they were not legally obligated to do under the contract; likewise, there could have been no estoppel since the defendants were placed in no worse position by the alleged waiver than they were in before. In fact, they secured a benefit by the payment of the $6,000.00 to them by the buyer, which the buyer was not compelled to pay under

the contract, in that had the buyer not advanced the $6,000.00 to the sellers for the purpose of harvesting the hops, the expense incident thereto would have fallen on the sellers.

Defendants in their brief do not discuss the foregoing cases although they were cited in appellant's brief. They turn aside the matter in the following language:

"* * * The principles relating to waiver as stated by the appellant no doubt have adequate authority to sustain them if applied to one or another of the many situations which have been described as 'waiver,' but they are applicable only in the proper situation and the facts of this case must first be considered in order to determine if the particular rules cited by the plaintiff apply to the case at bar."

Under Point I of their brief, defendants' position is outlined as follows:

"Wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense is thereupon lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted by the injured party but also assented to by the other party. 3 Williston on Contracts (Rev. Ed.), Sec. 688, p. 1983; Sheehan v. McKinstry (1922), 105 Or. 473, 483, 210 P. 167; Restatement of Contracts, Sec. 309."

The text quoted is inapplicable to the situation before us. At the time of the alleged waiver, no excuse existed on the part of the buyer to terminate the contract because at that time the sellers were not in default. There yet remained several weeks before the delivery date, at which time the buyer under the contract had the right to inspect and then accept or reject the hops, in part or in whole, and had the further

"right and option of accepting such rejected hops or any part thereof at a reduction in price equal to the difference in value of the said hops and the value of hops of the quality specified in this contract." What the parties accomplished by the conversation was in consonance with the contract and not in contrariety thereto.

Defendants in their counterclaim do not allege a breach or default on their part. In no view of the situation could the statement of Mrs. Hill, which was hereinbefore quoted, be construed as a breach of the contract on defendants' part. She merely told plaintiff she could not give it a prime hop, i.e., a 60-cent hop. Plaintiff under the contract was entitled to less than a prime hop at a reduced price at the time of delivery several weeks hence, if it could not get a prime hop.

In noting the cases cited under the Williston text, we find *Sheehan v. McKinstry,* supra, cited. Turning to that case, we find it does not support defendants' defense of waiver, the following being the factual situation: plaintiff, who was seeking a strict foreclosure of a land contract, had agreed to give the buyer " 'an abstract of title to said described premises showing good and sufficient title, free and clear of all liens and encumbrances to the date of this agreement.' " The buyer went into possession of the property, whereupon the plaintiff turned over to him an abstract of title to the premises, after which the buyer continued to make payments for a period of time and then failed to make further payments on the contract. His defense in the suit was that the abstract did not show a merchantable title. We held that the purchaser waived the seller's breach of the contract by making payments

on the contract and holding possession of the property after he had received the defective abstract and knew of his defective title.

The *Sheehan v. McKinstry* case involves waiver by conduct, that is, the failure of a party to an executory contract to take advantage of a default or breach by the other party and, instead, his continuing to perform as though no such breach had ever occurred, and is not authority for the defendants' position because, in the case at bar, there had been no default on the part of the defendants, and hence, there was nothing to be waived.

■ In the instant case, we are concerned with waiver, which is made the subject of contract—in fact, with a claimed modification of the terms and provisions of the contract. In such a case, a consideration for the waiver, or estoppel, is necessary, as was held in *Propst v. William Hanley Co.*, supra.

Turning to Restatement, Contracts, § 309, we find that the same has no application. The three illustrations given are far afield from the principle involved in this case.

■ For the foregoing reasons, the sellers' defense of waiver was not sustained, and the buyer was entitled under the contract to recovery of the $6,000.00 advanced by it, the sellers having breached their contract, and the lower court should have so instructed the jury. The judgment of the lower court will be reversed with directions to enter a judgment in favor of the plaintiff against the defendants in the sum of $6,000.00.

## PETITION FOR REHEARING

*Asa L. Lewelling* and *Bruce Spaulding,* both of Salem, contra.

*John H. Carson,* of Salem, and *Philip Hayter,* of Dallas, for the petition.

Before BRAND, Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

The defendants have petitioned for a rehearing. Their prime objection to our previous opinion is found in their challenge to our holding that the claimed waiver of the standard for the hops was not supported by a consideration. They now urge that we were in error for failing to hold that the waiver was one of election between two inconsistent rights, which, as they contend, needs no consideration.

For convenience, we shall hereinafter refer to. the defendant respondents as "the growers" and to the plaintiff appellant as "the buyer."

■ In our former opinion we held that there was no consideration to support the waiver there pleaded. Our conclusion in that respect accords with the first of the nine different definitions of waiver enumerated by Professor Williston, each being predicated upon a different set of circumstances giving rise to the particular type of waiver there defined. The first of these (3 Williston, Contracts (rev. ed.) 1960, § 679) is as follows:

"An agreement for sufficient consideration, made as part of or in substitution for an obligation previously made and still unperformed, which pro-

vides for a performance different from or substituted for that to which the parties were bound and entitled by the original obligation. This should be called a collateral promise or substituted contract or accord, which rescinds rather than waives the inconsistent terms of the prior obligation."

Exemplification of waiver as there defined is found in *Craswell et al. v. Biggs et al.*, 160 Or. 547, 86 P. 2d. 71, and *Propst v. William Hanley Co.*, 94 Or. 397, 185 P. 766.

The growers seek to avoid the effect of this by arguing, as they do in their petition for rehearing, as follows:

"* * * the respondents do not claim a change or modification of the terms of the contract, made by mutual assent or otherwise, but simply that the buyer was required by the terms of the contract, in its sole determination and judgment, *to elect whether to make or withhold the picking advance,* and that by making the advance under all the circumstances surrounding the parties at the time the contract was made, and at the time the advance was made, it made a choice by its overt acts and conduct between two entirely inconsistent rights, *either of which it might have then asserted, at its will alone.*" (Italics ours.)

They attempt to thereby bring themselves within the scope of Professor Williston's second definition of waiver (3 Williston, Contracts (rev. ed.) 1960, § 679) which reads: "An election whereby a party who has a choice of several rights or remedies adopts one and thereby destroys all right to others." By way of emphasizing the availability of the doctrine of waiver by election in this jurisdiction, the growers call our attention to *Johnson et ux. v. Feskens et ux.*, 146 Or. 657,

31 P. 2d 667, where this court quoted with approval the statement of Mr. Justice Holmes in *Bierce v. Hutchins,* 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828: " 'Election is simply what its name imports: a choice shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone.' "

■ There is no question that waiver may arise from conduct under certain circumstances, and that an election between two inconsistent rights may constitute an example of that kind.

The growers' claim of waiver by election here is predicated upon the buyer's advance of $6,000.00 to the growers on August 20, 1947, under the contract and in the face of the provision reading as follows:

"* * * Buyer shall not be obligated to make the advances hereunder, or any part thereof, if at any time the hops contracted hereunder, in the sole and exclusive opinion of buyer, shall not be up to the quality or quantity herein provided, or are in danger of not coming up to such quality or quantity thereafter * * *."

This provision, which we shall hereinafter refer to as the "escape clause," is solely for the benefit of the buyer.

The growers state their position with reference to the effect of this clause as follows:

"* * * This advance was obviously made in consonance with the contract provisions, and yet an *excuse* existed for not making the advance, as shown by the pleadings and evidence. Furthermore, the buyer admittedly knew of its right to make or withhold the advance, and had simply reached a point in the life of the contract, and under its terms, when the buyer was squarely faced with the election

whether to call for the growers' continued performance or abandon the contract.''

██ Every waiver does not necessarily create an estoppel. *Johnson et ux. v. Feskens et ux., supra,* at page 662. However, waivers creating estoppels can be successfully asserted only by those who have been misled to their prejudice. *Mitchell v. Hughes,* 80 Or. 574, 157 P. 965; *First National Bank of Portland v. Stretcher et al.,* 169 Or. 532, 538, 129 P. 2d 830. Also see *Castleman v. Stryker et al.,* 109 Or. 207, 227, 219 P. 1084.

██ The growers claim that they come within the purview of this rule, as disclosed by the following found in their petition:

"By making the advance, the buyer impliedly gave its permission to the sellers to excuse their performance in the future of a condition which might otherwise have prevented their recovery under the contract. The sellers acted in reliance upon the permission so given by immediately beginning the harvest of the crop, *which they would not have done had the buyer found that the hops were not up to the quality or quantity required by the contract and had therefore elected to refuse the picking advance.*'' (Italics ours.)

The foregoing claim of reliance upon the so-called waiver by election to the detriment of the growers is untenable. In addition to the buyer's obligation to take the hops if they are of contract standard when delivered, the buyer also enjoys an option to buy the hops if they are less than standard at that time. This is a valuable right and is predicated upon that part of the contract reading:

"If buyer rejects all or any portion of the hops sold hereunder because the same are inferior, for

any cause whatever, as to the quality provided for herein, it shall nevertheless be the duty of seller to tender such hops so rejected to buyer, and buyer shall have the right and option of accepting such rejected hops or any part thereof at a reduction in price equal to the difference in value of the said hops and the value of hops of the quality specified in this contract.''

This right justifies the buyer at the time fixed for the advancement in speculating on whether or not he should risk further investment in the contracted commodity and hope to recoup the same at the time of delivery, if he then feels their quality warrants buying them as rejected hops.

The act of the buyer in making the advance did not change one whit the growers' obligation under the contract. Their duties were not thereby diminished nor their burdens enhanced. They had committed themselves to deliver 20,000 pounds of their hops to the buyer, whether they were of contract grade or less. The advance money insured the consummation of that obligation on their part.

The growers acquired no rights under the escape clause. Their rights were in no way enlarged by the fact that the buyer elected to make an advance even though, in the growers' opinion, the buyer might have rightfully refused to do so. The escape clause gives the buyer on the date fixed for the advance, that is, August 20, 1947, only the right to refuse to do so if, *at that time or any time prior thereto,* the buyer in the honest exercise of his judgment determines (1) that the hops are not up to the quality or quantity provided by the contract, or (2) they are in danger of not coming up to such quality or quantity. The buyer, in the exercise of the judgment accorded him under

that clause, might well have concluded that the defects which he observed were transient in character, that is to say, that even though the hops did not at that time meet the tests of the contract in every respect, such defects, if any, might nevertheless be later corrected by proper cultivation, processing or otherwise before the date fixed for their delivery. It is true that the buyer's conclusions as to such a possibility might ultimately prove disappointing, but he nevertheless had that right to so speculate; and if he did so, no injury inured to the growers thereby, and no benefit can be claimed by them by reason thereof. The buyer, at the time of the advance, might well have concluded that even if the quality defects then present and known continued to the time of delivery, he would, notwithstanding, be interested in buying them as rejected hops and at the prices provided for in the contract, as he had a right to do under such circumstances.

Under all the circumstances, we are unable to see how the growers can successfully claim waiver or, claiming it, demonstrate that they have been misled to their prejudice by the buyer's act in making the advance he contracted to make and which was accepted by them and used as the contract provided.

We have examined and considered the opinions in the following cases rendered on January 31, 1951, by the United States Court of Appeals for the Ninth Circuit: *Hugo V. Loewi, Inc., v. Geschwill,* 186 F. 2d 849; *Hugo V. Loewi, Inc. v. Smith,* 186 F. 2d 858; and *John I. Haas, Inc., v. Wellman,* 186 F. 2d 862. These constitute a series of cases all involving contracts for the purchase and sale of hops grown in the Willamette valley in the year 1947. Although these cases are common to the case at bar in that they involved hop con-

tracts for the purchase and sale of hops and wherein the question of "mildew" was an issue, they are unlike the one before us in that in none of them did the grower concede a quality defect, as here, and plead waiver or estoppel as a defense. In the *Hugo V. Loewi, Inc., v. Smith* case, our first opinion was cited to the court, where it was reviewed and disposed of by Judge Bone with the observation:

"It is our view, and apparently the view of the appellant, that there was no finding of waiver or estoppel by the trial court in the instant case. Therefore, the cited case is not germane to any issue before us   *   *   *."

Beyond that, neither waiver nor estoppel is discussed in any of these recent federal cases, and they are of no aid here.

■ The growers also contend that the contract itself does not include any express agreement obligating the growers to repay the advances made by the buyer. In this they are clearly contradicted by the following language found in the contract:

"*   *   *   In the event said hops are not delivered as herein provided, and advances previously made cannot be applied on the purchase price of said hops, the amount of such advances, with interest, shall be repayable to buyer at the time such delivery of hops should have been made   *   *   *."

In this matter the growers forthrightly admit that the hops were below contract standard and were valueless at the time of delivery. Even if we accept the doctrine of waiver as expounded by the growers and hold, as they urge us to do, that the buyer by making the advance of $6,000.00 waived any right to thereafter reject the hops on the ground of inferior quality, such

waiver would not operate as a waiver of the growers' obligation to repay the advance money as was required in the foregoing contract provision, and their obligation thereunder to repay would continue in full force and effect.

The petition is denied.