**HUGO V. LOEWI, Inc. v. SMITH.**

No. 12441.

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1951.

---

12. Sec. 23–524, O.C.L.A.

Kerr & Hill, Robert M. Kerr and Stuart W. Hill, all of Portland, Or., for appellant.

Roy F. Shields, Randall B. Kester and William E. Dougherty, all of Portland, Or., for appellee.

Before MATHEWS, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This is the second in a series of three cases all involving contracts for the purchase and sale of hops grown in the Willamette Valley, Oregon in the year 1947. The instant case was commenced in the Circuit Court for the State of Oregon and removed to the District Court for the District of Oregon by the defendant pursuant to Title 28 of the Judicial Code, 28 U.S.C.A. § 1441. All three cases were tried to the court without a jury and are now on appeal to this court. The other two cases are Hugo V. Loewi, Inc., v. Geschwill, 9 Cir., 186 F.2d 849, and John I. Haas, Inc., v. Wellman, 9 Cir., 186 F.2d 862.

Two causes of action are stated in appellee's complaint. The first is for the price of cluster hops less the amount of an advance payment. The second is for the price of fuggle hops less the amount of an advance payment. There is no dispute in regard to the fuggle hops in regard to quality; the only dispute being in regard to whether the advance for the clusters, which were rejected, should be deducted from the payment for the fuggles.

Appellee and plaintiff below is Kilian Smith the hop grower and the seller under the contract. Defendant below and appellant here is Hugo V. Loewi, Inc., the buyer under a contract. The terms of the contract are in general the same as those in the contract in the Geschwill (No. 12,440) case, 186 F.2d 849, the only differences being the identity and quantity of hops covered, the rate and amount of "advances" to be paid by appellant and the contract price.

The contract in the instant case was entered into on August 19, 1947 and a "picking advance" was made on August 27th. The picking of the cluster hops was commenced on August 25th and continued until September 3rd. In due course the hops were delivered to the Oregon Electric warehouse and appellee selected a permissible price of 85¢ per pound. One sample was forwarded to appellant's New York office and later tenth bale samples were taken. The hops were rejected shortly thereafter appellant giving as the reason therefor that the hops were "dirty picked" and "badly blighted."

The hops were not resold by appellee.

Appellant tendered to appellee a check for the fuggles which had been accepted by the appellant. From this check appellant had deducted the "advances" for both the fuggles and the clusters and it was returned by appellee.

The substance of the trial court's findings is that appellee duly performed all the terms and conditions of the contract by him to be performed; that appellant rejected and refused to pay for the hops on the ground that they were blighted and dirty picked; that on the facts neither claimed defect was material; that said hops were not any more blighted or mildewed than when appellant contracted to

buy the same, or when appellant elected to make the advance payment, or when appellant instructed appellee to continue picking; that the leaf and stem content was within the tolerance allowed by the terms of the contract; that appellee delivered the identical crop which appellant had contracted to buy and that appellant did not rely on any warranty whether in the contract or otherwise that the crop of hops would be any different than said crop actually was when tendered or delivered; that said hops when tendered substantially conformed to the quality provisions of the contract.

The trial court found that the price was 84 cents per pound for cluster hops under the sliding scale provision and allowed appellee the sum of $8,846.52 on his first cause of action, which figure equals the contract price less the $3,000.00 advance. On the second cause of action the court allowed appellee $6,497.26, this amount being the contract price for fuggle hops less the $3,500.00 advance. This appeal followed.

On the question of quality there is one minor point that can readily be disposed of. One of the reasons advanced for rejecting the hops was that they were "dirty picked." An official analysis (authorized by the contract) shows, and the trial court so found, that the leaf and stem content was 9% or within the tolerance limit provided by the contract.

On the question of mildew it is apparent that there was some mildew damage to the hops. One of appellee's witnesses testified that these hops would not be accepted as "prime hops." However, both at the time the contract was executed and at the time the "picking advance" was made appellant through its representative had knowledge of the mildewed condition of the hops. In regard to the knowledge of appellant at the time the contract was executed the court found: "Before entering into said cluster hop agreement defendant [appellant] inspected said cluster hop crop and defendant knew that said hop crop then showed some mildew and would in normal course show such mildew when picked and baled."

Appellant admits that the first part of this finding is true but denies that the second part is supported by any substantial evidence. We do not agree. There is evidence in the record that not all of the hops were picked; that appellee and his pickers made every effort to avoid mildewed hops; and that selective picking of hops is impractical. The finding of the trial judge is in our view supported by substantial evidence.

Appellant contends that even if this finding is true it is wholly immaterial by reason of the fact that the contract was then impossible of performance, and this impossibility excuses appellant, even though it knew of the impossibility. This is little short of an inference that when appellant entered into the contract and when it made the picking advance it was doing useless acts, knowing that when the time came for delivery it was going to reject the hops. We feel that the finding of the trial court that appellant did not rely on any warranty that the hop crop would be in any different condition than it actually was when delivered is a more reasonable and logical explanation of the intention of the parties.[1] It should be noted here that the contract between the parties was entered into at a time when the hops were in existence on the vines and the mildew condition was known to appellant. This was not a contract for a future crop as the language of the contract implies. This is a proper factor for consideration in arriving at what the parties intended, and the findings of the court below indicate to us that the judge had this factor in mind.[2]

This finding by the trial court is further supported by the fact that when Fry, an

1. See Williston on Contracts (Rev.Ed.) sec. 972.

2. Sec. 2-218, O.C.L.A. provides as follows: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

employee of appellant's representative subsequently visited appellee's farm to make the "picking advance" he observed hops in the pickers' baskets and noticed there were "red ones" among them. On this same visit he looked at the hops on the kiln floor and in reference to these hops he said:

"Q. Did you note their appearance? A. About the same as they were in the baskets in the field.

"Q. What was that appearance? A. They were a little rough in picking, and he had quite a few red ones in there, the same as I had told him when we were in the field, cautioning him about picking them that way."

■ From the above it is apparent that Fry was aware of the condition of the hops at the time the "picking advance" was made. By the terms of the contract if the hops were not of the proper quality the appellant was relieved of all obligation to make the advance.[3] Nevertheless the "picking advance" was made at this time and the evidence indicates that Fry had authority to make it or refuse it.[4] In our opinion this factor is convincing evidence that appellant did not rely on any warranty that the hops would be free from mildew.

Appellant directs our attention to the recent Oregon Supreme Court decision of S. S. Steiner, Inc., v. Hill, 226 P.2d 307. That case was an action by the buyer of hops to recover "advances" made. The seller counterclaimed on the theory that the plaintiff had waived delivery of the hops pursuant to the original contract so far as quality was concerned. The parties in that case had discussed the mildew condition of the hops and the buyer told the seller to go ahead and pick the hops

and made a picking advance. The Oregon court reversed a judgment for defendant on his counterclaim holding that the defense of waiver or estoppel was not established.

It is our view, and apparently the view of the appellant, that there was no finding of waiver or estoppel by the trial court in the instant case. Therefore, the cited case is not germane to any issue before us for in that case the seller admitted the violation of the contract and relied on an alleged waiver of the quality provisions. On the contrary, the appellee here maintains that the hops did conform to the contract. However, in view of the similar circumstances surrounding the making of the "picking advance" in that case and the one in the case before us, we point out several distinguishing features. In the Steiner case it is not clear from the opinion that the buyer had the right to be relieved from all obligations under the contract, if, at the time for making the picking advance, the hops did not conform to the quality provisions. Further, the buyer in that case had the further option to accept rejected hops at a reduced price commensurate with their market value. In the instant case, as we have indicated, the buyer had no such option, but did have the right to refuse to make the picking advance and relieve itself of all obligations under the contract. We make no determination as to whether this would constitute a waiver or estoppel, but we do say that the making of the picking advance under such circumstances is evidence having some weight that appellant received the quality of hops it bargained for.

We are persuaded that the trial court committed no error in finding that appellee delivered the identical crop which appel-

---

3. The contract provides in part: " * * * and that, if before, at, or during the time of picking such hops, they are not in such condition so as to produce the quality of hops called for under the terms of this agreement, then in such event, the buyer shall be discharged from any obligation to make any advances or further advances, and from the obligation to receive the whole or part of said hops; * * *."

4. Fry testified that the check he took to the Smith ranch was blank as to amount and he had authority to fill in the amount. He was thus the agent with whom appellee was dealing and his authority to determine the amount of the picking advance was obviously broad enough to refuse to advance any amount until he had conferred with his principal as to the condition of the hops which he observed.

lant had contracted to buy; that appellant did not rely on a warranty that the crops would be in any different condition or quality than they actually were when tendered or delivered; and that the hops tendered and delivered substantially conformed to the quality provisions of the contract.

Our view is that the measure of damages applied by the trial court was proper.[5] The contract in the instant case contained the same "liquidated damages" clause as the case of Hugo V. Loewi, Inc., v. Geschwill, 9 Cir., 186 F.2d 849. What we said in that case is equally applicable here.

We have examined the other assignments of error in reviewing the record. The issues were thoroughly explored in the trial and the contentions of both sides well presented. The findings are supported by substantial evidence and no reversible error was committed.

The judgment is affirmed.

---

5. See discussion of this issue in Hugo V. Loewi, Inc. v. Geschwill, 9 Cir., 186 F.2d 849.